LOUISE ZUCKER, as Administratrix of the Estate of SIMON ZUCKER, Deceased, Respondent, v. FREDERICK W. WHITRIDGE as Receiver of the THIRD AVENUE RAILROAD COMPANY, Appellant.

Negligence — action for death of pedestrian struck by trolley car — contributory negligence of plaintiff's intestate — evidence — erroneous admission of general custom or manner of crossing street by plaintiff's intestate to prove exercise of care by him when injured.

1. Plaintiff's intestate was struck by a trolley car while crossing an avenue, running north and south, at its intersection with a street running east and west. It was a dark and misty night but there were electric lights at two of the corners and a gas light at another. On the avenue were two trolley tracks; the one on the east for north-

bound cars, the one on the west for south-bound cars. As deceased came from the west, and until he reached the westerly curb of the avenue, his view to the south was somewhat obscured by the supporting columns and stairways of an elevated railroad and stations thereof, but during the last fourteen feet of the distance, from the westerly curb of the avenue to the north-bound trolley track, he had a clear view to the south and could have seen a well-lighted car approaching from that direction. The deceased was in the full possession of all his faculties, had frequently passed over this crossing and knew the locality well. In crossing the avenue he walked steadily along without turning his head or looking in any direction except straight ahead until just as he was stepping on the north-bound track, when he jumped back, as if he noticed the approaching car, but too late to escape being struck by it. Although the car was running fast and no gong was sounded or other warning given, the car was well lighted, and if the deceased had looked he could have seen it approaching, but he stepped directly in front of the car when in plain sight and he could have almost touched it. *Held,* that the burden of furnishing some evidence to show that the deceased had exercised some care rested upon the plaintiff, that the evidence submitted not only fails to establish such fact, but, on the contrary, shows that the deceased was guilty of contributory negligence as a matter of law.

2. A witness who had known the decedent for eight years, and during that period had walked with him through the streets of the city of New York and had crossed railroad tracks with him, was asked by the plaintiff: "State what you observed as to his manner of crossing railroad tracks in your company." Objection was made to the question as incompetent and immaterial, but it was overruled and an exception noted. The witness then answered: "When we were about to cross railroad tracks, he usually looked to the right and to the left of him and put a restraining hand on my arm before crossing, to make sure that there were no vehicles of any kind coming." The defendant's counsel moved to strike out the answer as incompetent and not relevant to the issues in the case, but the motion was denied and an exception taken. On review of the authorities in this and other states, *held,* that the weight of authority is against admitting evidence of general conduct under proven circumstances to show conduct of the same kind under similar circumstances on a particular occasion, when there were eye-witnesses of the occurrence, including the person injured if he survived the accident, and that the evidence in question, even if relevant, should be held incompetent under the circumstances,

because its probative force does not outweigh the inconvenience of a multitude of collateral issues not suggested by the pleadings, the trial of which would take much time, tend to create confusion and do little good.

*Zucker* v. *Whitridge*, 143 App. Div. 191, reversed.

(Argued March 7, 1912; decided March 19, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 15, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick J. Moses* and *James L. Quackenbush* for appellant. The direct evidence of the eye-witnesses produced by the plaintiff affirmatively proved that the deceased was guilty of contributory negligence as a matter of law. (*Baxter* v. *A. & S. E. R. R. Co.*, 190 N. Y. 439; *Hoffman* v. *S. R. T. Ry. Co.*, 50 App. Div. 83; *Flynn* v. *Joline*, 135 App. Div. 291; *Greene* v. *Met. St. Ry. Co.*, 100 App. Div. 303; *Johnson* v. *T. A. R. R. Co.*, 69 App. Div. 247; *Margulies* v. *I. St. Ry. Co.*, 116 App. Div. 157; *Lofsten* v. *B. H. R. R. Co.*, 184 N. Y. 148; *Bombace* v. *I. S. Ry. Co.*, 188 N. Y. 288; *West* v. *M. S. Ry. Co.*, 105 App. Div. 373; *McAuliffe* v. *N. Y. C. Ry. Co.*, 122 App. Div. 633.) The court erred in admitting testimony to the effect that the deceased was habitually careful in crossing the city streets. (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465; *Senecal* v. *T. I. Steamboat Co.*, 79 Hun, 574; *Parsons* v. *S., B. & N. Y. R. R. Co.*, 113 App. Div. 461; *Wooster* v. *B. & S. A. R. R. Co.*, 72 Hun, 197.)

*Julius Henry Cohen* and *Theodore B. Richter* for respondent. The law exacted of the deceased only the care of a reasonably prudent man under similar circumstances. His freedom from contributory negligence can

be inferred from the circumstances; this rule is peculiarly applicable where an accident results in death. The deceased was bound to exercise reasonable precaution, but not to insure himself absolutely against all accident. (*Schafer* v. *Mayor, etc.*, 154 N. Y. 466; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 224; *Baxter* v. *A. & S. E. R. R. Co.*, 190 N. Y. 439; *Moebus* v. *Herrmann*, 108 N. Y. 349; *Smith* v. *M. S. Ry. Co.*, 7 App. Div. 253; *Buhrens* v. *D. D., etc., R. R. Co.*, 53 Hun, 571; 125 N. Y. 702; *Brozek* v. *S. Ry. Co.*, 10 App. Div. 360; *Hickman* v. *Schimper & Co.*, 125 App. Div. 216, 218; *Monck* v. *B. H. R. R. Co.*, 97 App. Div. 447; 182 N. Y. 567; *Shaw* v. *Jewett*, 86 N. Y. 616.) It was proper to permit testimony with reference to the conduct of the deceased in crossing streets. (1 Wigmore on Evidence, 166, § 92; *G. T. Ry. Co.* v. *Richardson*, 91 U. S. 454; *Sheldon* v. *H. R. R. R. Co.*, 14 N. Y. 218; *Crist* v. *E. Ry. Co.*, 58 N. Y. 638; *McCarragher* v. *Rogers*, 120 N. Y. 526; *Ry. Co.* v. *McNeil*, 66 N. E. Rep. 777; *State* v. *R. R. Co.*, 52 N. H. 528; *Davis* v. *R. R. Co.*, 68 N. H. 247; *Smith* v. *R. R. Co.*, 70 N. H. 153; *Tucker* v. *B. & M. R. R. Co.*, 73 N. H. 132; *M. P. Ry. Co.* v. *Moffatt*, 60 Kans. 113.)

VANN, J. Third avenue in the city of New York, running nearly north and south, crosses Eighteenth street almost at right angles. The defendant has two railroad tracks laid on the surface of the avenue at the point where it crosses the street, the easterly track being used for cars going north and the westerly for those going south. On the 18th of December, 1908, at about half past eight in the evening, the plaintiff's intestate while walking easterly on the northerly crosswalk of Eighteenth street, as he was about to step over the westerly rail of the north-bound track, was struck by a north-bound trolley car and fatally injured. In this action, brought by his administratrix under the statute, the

jury found a general verdict in her favor and the Appel-
late Division affirmed the judgment entered thereon, two
of the justices dissenting.    As the negligence of the
defendant is not now denied, the primary question is
whether the decedent was negligent as matter of law.
This question depends on the testimony given in behalf of
the plaintiff, for no witness was called by the defendant.

There is an elevated railroad structure over the avenue
at the point in question with the usual stations, plat-
forms and stairways, and when the accident happened a
train was passing overhead.    A south-bound car had just
crossed Eighteenth street, which is a little more than
thirty feet wide between curbs, and it was some distance
south of the street when the decedent was struck.
The night was dark and misty, but there was an electric
light on the northeast and another on the southwest
corner and a gas light on the northwest corner.    Twelve
iron columns each sixteen inches square supporting the
elevated structure stood as follows: Three in the westerly
sidewalk of the avenue, one on either side of Eighteenth
street, four feet and three inches west of the west curb
of the avenue and the third on the west curb of the
avenue, the first and second being a little more than
thirty feet apart and the second and third between fifty
and sixty feet; three a few feet west of the south-bound
track and three more a few feet east of the north-bound
track and about the same distance apart north and south
as the three first above described; three more in the
easterly sidewalk situated about the same as the three in
the westerly sidewalk.    There were also the four stair-
ways and the poles supporting the three lights.

The decedent was in the prime of life and in the
possession of his faculties.    As he walked easterly on the
north crosswalk of Eighteenth street the crossing was
directly before him, but his view toward the south was
somewhat obscured at some points by the stairways,
columns, etc., until he reached the westerly curb of the

avenue.  He then had about eighteen feet to go before reaching the last column which obstructed his view, and while going this distance his vision was much less obstructed than before.  From that column to the west rail of the south-bound track was four feet three inches; the rails of that track were four feet eight and one-half inches apart, and the distance between the nearest rails of the two tracks was five feet four inches, and while going this distance of a little over fourteen feet his view of the defendant's tracks was not obstructed at all, either to the north or south.  He was walking at the rate of about three miles an hour, while the north-bound car was going at the rate of from fifteen to eighteen miles an hour, yet no gong was heard, or warning of any kind observed.  It did not stop at the south crosswalk.  As he lifted his foot to step over the west rail of the north-bound track he was struck on his right side by the left-hand front corner of a north-bound car, whirled around and thrown down, but not run over.  The car stopped within from five to eight feet of his body.  According to the only witness, who assumed to estimate the distance in feet, the car was from four to eight feet from him as he was about to step on the track.  During the last fourteen feet of his journey he had a clear view to the south, and if he had looked in that direction he could have seen the north-bound car, which was fully lighted, and approaching rapidly.  While walking that distance he was in a situation which required active vigilance.  He lived nearby, frequently passed over this crosswalk, and knew the locality well.  He had nearly twenty feet to go in order to safely clear both tracks, and over fourteen feet to go before reaching the west rail of the north-bound track.  He did not halt, or vary his rate of speed, or turn his head, or look in any direction except straight ahead, so far as was observed by any of the four persons who saw the accident.  Two witnesses were about fifteen feet behind him walking in the same direction, one of whom

testified that he held his head "perfectly horizontal," in a "natural position," while the other said that he was walking "the same as anybody else· \* \* \* about the same" as the witness himself, and he added: "I walk with my head up and look at everything when I am going to cross the cars." While this warranted the inference that the decedent walked "about" as the witness did, it did not permit the inference that he looked at everything, as the witness said he did. Another witness testified that the head of the decedent was "level, I mean straight, just as a man would carry himself ordinarily." There was no different description of his carriage or conduct.

The trial court and a majority of the Appellate Division, apparently with some hesitation, announced as their opinion that the jury could have found from the evidence that if the decedent had looked he could not have seen the approaching car in time to save himself. I see no evidence in the record to justify this conclusion. While the view of the decedent was somewhat obstructed at first, for over four feet before he attempted to cross the first track, and for over fourteen feet before he attempted to cross the second track, his view both to the north and south was wholly without obstruction of any kind. If he looked at first, and found his view was not clear, he was bound to keep on looking, and not try to cross the tracks until he could see his way was free from danger. The trial court charged that: "If the jury find that a south-bound car temporarily interfered with Zucker's view of the north-bound track, that fact made it incumbent upon him to be vigilant and to look again ·after the car had ceased to interfere with his view." He did not look, or try to look at any time or place, so far as appears. He passed over the space where the view was clear apparently so absorbed in thought that he looked in no direction except straight ahead. No witness saw him look, or try to look, or turn his head, or make any movement as if he was looking, until, as one witness stated,

as he was in the act of stepping on the last track when it appeared as if he noticed the car and tried to jump back, but the car caught him before he could escape.

The trial court also charged that the decedent "did not have the right to rely on the motorman's stopping on the south crosswalk." Moreover, if the decedent saw the car when it was at the south crosswalk, or near it, the theory upon which the case was submitted to the jury utterly failed and he was conclusively shown to be guilty of affirmative negligence.

The burden of furnishing some evidence tending to show that the decedent used some care rested upon the plaintiff, but she did not meet it. Although two witnesses had him under observation all the time and two more the most of the time while he was traveling the last thirty feet toward a place of known danger, not one saw him look in any direction except straight ahead. During the last fourteen feet he crossed the westerly tracks and was about to cross the easterly, yet it did not appear, either from direct evidence or from circumstances, that he looked either to the right or the left as he walked this distance, and it conclusively appears that if he had looked he could have seen the approaching car, for it was no longer obstructed either by columns or the south-bound car. If there had been no eye-witness of the accident less evidence of care would have been required from necessity, but in such a case the jury could not find that care was exercised without some evidence, even if weak, to act upon. Here there was none. The surrounding circumstances did not show that the accident might have happened without negligence. While not obliged to look in any particular direction at any particular point, it was the duty of the decedent to look in both directions before he tried to cross the tracks, for he was familiar with the situation and knew the danger. The night was misty and dark, but the locality was well lighted; the north-bound car was fully lighted and all

the witnesses had no difficulty in seeing the car, while some of them saw it when it was more than half a block away. The slight defect in his eye-sight did not excuse him from looking, and it had but a slender bearing on what he could have seen if he had looked. As matter of law he was not obliged to stop and look, but it was his duty at least to look as he walked on and not blindly plunge into danger. He did not go on to the second track and get caught there before he could get off, for he was struck as he was going on and was thrown down but not run over. He stepped directly in front of the car when in plain sight and he could have almost touched it. (*Reed* v. *Metr. St. Ry. Co.*, 180 N. Y. 315.)

A majority of the judges are of the opinion that the decedent, upon the most favorable view of the evidence that can be taken in the interest of the plaintiff, was guilty of contributory negligence as matter of law. As we said in a late case: '' He knew that he was in a place of danger and it was his duty to exercise some care for his own safety, yet he took no care whatever. * * * Every person is bound to use reasonable care to avoid known dangers and if he fails in this duty to himself, the loss ensuing does not fall on another whose negligence helped to bring about the result, for the law does not apportion negligence nor assign to each party responsibility for his own contribution. The one guilty of contributory negligence must bear the loss alone.'' (*Volosko* v. *Interurban St. Ry. Co.*, 190 N. Y. 206, 209.)

One other question requires attention on account of its importance and novelty. A witness who had known the decedent for eight years, and during that period had walked with him through the streets of the city of New York and had crossed railroad tracks with him, was asked by the plaintiff: "State what you observed as to his manner of crossing railroad tracks while in your company." Objection was made to the question as incompetent and immaterial, but it was overruled and an excep-

tion noted. The witness then answered: "When we were about to cross railroad tracks, he usually looked to the right and to the left of him and put a restraining hand on my arm before crossing, to make sure that there were no vehicles of any kind coming." The defendant's counsel moved to strike out the answer as incompetent and not relevant to the issues in the case, but the motion was denied and an exception taken.

The learned justices of the Appellate Division divided in judgment on this question by the same vote of three to two as upon the other, but one of the majority in casting the decisive vote said: "As to the evidence that the deceased customarily exercised care in crossing railroad tracks, I much doubt its admissibility, but, even assuming that it was incompetent, I am not persuaded that it tended in any appreciable degree to induce the verdict. At most it only tended to lend a tone of probability to the direct evidence that on the occasion of the accident Zucker apparently observed ordinary care in crossing the street."

The converse of the proposition involved was held by this court in *Eppendorf* v. *Brooklyn City & Newtown R. R. Co.* (69 N. Y. 195). In that case one of the issues was whether the plaintiff was negligent in trying to board a slowly moving street car after it had nearly stopped in response to his signal. The court said, all the judges concurring except one who was absent: "The offer of defendant's counsel to show that plaintiff was in the habit of jumping on defendant's cars when in motion was properly excluded. It is impossible to perceive what bearing the evidence offered could have. * * * It was not offered to show that the plaintiff was generally careless or reckless, and if it had been, it would have been incompetent. The simple fact that he was in the habit of jumping upon the moving cars could have no bearing in this case. The sole question to be determined here, so far as relates to plaintiff's alleged contributory negligence,

was the character of the plaintiff's acts under the circumstances existing at the time; and what he may have done at some other time under other circumstances, could have no bearing upon that question." (p. 197.)

In an earlier case it had been held, one judge dissenting, that evidence of the intoxication of the flagman on previous occasions was immaterial, because "his neglect on a former occasion, or his former intemperate habits, would not be sufficient to create negligence, or be any evidence of it, when this accident happened. The evidence objected to tended, like the suggestion that the railroad company did not own the highway, to create a prejudice in the mind of the jury, and invite punitive damages, not directly arising from the occurrence." (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465, 472.)

To the same effect is *Cleghorn* v. *N. Y. C. & H. R. R. R. Co.* (56 N. Y. 44, 46), where Chief Judge CHURCH said: "Previous intoxication would not tend to establish an omission to give the signal on the occasion of the accident." (See, also, *Gorman* v. *N. Y., Chicago & St. L. R. R. Co.*, 194 N. Y. 488, 493.)

In *Wooster* v. *Broadway & Seventh Avenue R. R. Co.* (72 Hun, 197) one of the issues was whether the driver of a coupé was negligent, and evidence given in behalf of the plaintiff tending to show that he was generally careful was held incompetent. Judge FOLLETT, after citing authorities, said: "It has been many times held that it is not competent for a plaintiff to give evidence that the person by whom the alleged negligent act was committed had previously committed similar acts, or that he was generally negligent or unskillful. The same rule is applicable to a plaintiff seeking to show that the acts of her servant did not contribute to the accident." (p. 198.)

In *Parsons* v. *Syracuse, Binghamton & N. Y. R. R. Co.* (133 App. Div. 461) it was held that an administrator seeking to show that a decedent, who was killed

1912.] Opinion, per VANN, J. [205 N. Y.]

while crossing a railroad track, used care at the time of the accident, may not give evidence of specific instances of care on the part of the decedent prior to the accident although no eye-witness was present when it occurred. Mr. Justice CHESTER said: "A man who is careful on one occasion may be careless on another. The circumstances at one time may be such as to induce prudence while they might not at another time. But the worst feature of this class of evidence is that it presents issues for trial not tendered by the pleadings, and which the opposing party is not prepared to meet. If this evidence was competent for the plaintiff it would be just as competent for the defendant to prove that on prior occasions the plaintiff's intestate had been careless; that also on other nights when this engineer ran his engine over this crossing he had run it slowly; that he had his headlight burning; that he rang his bell and blew his whistle, and that he had been seen many times on prior occasions to observe all these precautions. It would also be competent for the plaintiff to dispute such testimony and to show that on prior occasions he had been careless. Thus the issues would be largely multiplied, and no party going to trial would know in advance what he would have to meet." (p. 462.)

In some states such evidence is regarded as competent. In New Hampshire it was held that the fact that a person killed at a grade crossing customarily stopped, looked and listened for trains at that point is competent to prove similar conduct at the time of the injury, in the absence of testimony by any eye-witness as to his behavior on that occasion. (*Tucker* v. *Boston & Maine R. R. Co.*, 73 N. H. 132.) No argument was made but the bare conclusion announced, earlier cases being cited which involved the custom of those running trains and of those injured at railroad crossings with reference to general care or carelessness. (*State* v. *M. & L. Railroad*, 52 N. H. 528, 549; *Smith* v. *Boston & Maine Railroad*, 70 N. H.

53, 82.) The argument used in the earlier case was that " it would seem to be axiomatic, that a man is more likely to do or not to do a thing, or to do it or not to do it in a particular way, as he is in the habit of doing or not doing it. But this must be understood of acts which are done, or omitted to be done, without any particular intent or purpose to injure any one."

In a case in California where there was a conflict of evidence as to whether the plaintiff carelessly jumped off a train while it was moving, the railroad company was allowed to show that within the year preceding the accident the plaintiff had frequently traveled over that route and had frequently jumped off the cars while in motion. (*Craven* v. *Cent. Pac. R. R. Co.*, 72 Cal. 345, 347.) The court said: " A sensible man, called upon, out of court, to determine whether or not a certain person had on a certain occasion carelessly jumped off a moving train of cars, and finding the direct testimony as to the matter conflicting, would naturally and properly give *some* weight to the fact that the person was in the habit of alighting from cars in that manner    *    *    *."

In Kansas it was held that the fact that a man killed on a railroad crossing was careful and sober and had previously exercised due care in passing over the same crossing, tends to repel any inference of negligence arising from the mere fact that he went upon the track when a train was approaching, there having been no eye-witness of the collision until he was actually upon the track. The evidence does not appear to have been objected to, and it is assumed to have been competent without argument. (*Mo. & Pac. Ry. Co.* v. *Moffatt*, 60 Kan. 113.)

In Illinois evidence that the deceased was " habitually cautious and temperate " was held to be competent where there was no eye-witness of the accident, but otherwise not. (*Chi., Rock I. & P. R. Co.* v. *Clark*, 108 Ill. 113, 117.)

On the other hand, similar evidence has been held

incompetent in several different states, as follows: In Wisconsin, to show that the person injured "was an habitually careless man " (*Propsom* v. *Leatham*, 80 Wis. 608, 612); in Pennsylvania, that the deceased " had made a practice of jumping from the elevator while in motion " (*Baker* v. *Irish*, 172 Penn. St. 528, 531); in Connecticut, that the intestate " was a careful and prudent driver " (*Morris* v. *Town of East Haven*, 41 Conn. 252); in Illinois, " that the deceased was in the habit of jumping on trains " (*Peoria & Pekin U. Ry. Co.* v. *Clayberg*, 107 Ill. 644, 648); in Iowa, in a case where there was some evidence that the deceased was asleep in his buggy when he drove on the track, that he had been " found asleep in his buggy " on other occasions (*Dalton* v. *Chi., Rock Is. & P. R. Co.*, 114 Ia. 257, 259); in Maine, that in the opinion of those who knew the deceased well he was a cautious and careful man, no witness having seen the accident (*Chase* v. *Maine Cent. R. R. Co.*, 77 Me. 62, 65); in Massachusetts, specific instances of want of care in the engineer in his business of running trains within three months of the injury, before or after (*Robinson* v. *Fitchburg & Worcester R. R. Co.*, 73 Mass. 92, 95); also " previous specific acts of negligence on the part of the engineer, known to the defendant's superintendent " (*Connors* v. *Morton*, 160 Mass. 333, 334).

Professor Wigmore seems to appreciate " the probative value of a person's habit or custom as showing the doing on a specific occasion of the act which is the subject of the habit or custom," but he points out difficulties which arise in connection with such evidence. (§ 92.) Thus he says: " Can there be a habit of non acting?" (§ 97.) " Is it possible to believe that careless action can ever be anything more than casual or occasional? If it is, are we not really predicating a careless disposition, rather than a genuine habit, and then are we not violating the rule against character in a civil action in employing such evidence? These doubts serve to explain the precedents that

exclude such evidence; but it would seem that the doubts are not always well founded, and that such evidence is often of probative value, and is not attended by the inconveniences of character evidence." (1 Wigmore on Evidence, § 97.)

The Messrs. Elliott in their work on Evidence say that " Evidence of personal habit is often of some probative value and is frequently admitted; but such evidence should not be admitted when to admit it would violate the character rule, and it cannot, ordinarily, be proved that a person did or did not do a certain thing at a particular time by showing that he acted in a certain way under similar circumstances at other times." (1 Elliott on Evidence, § 172.)

In Thompson on Negligence it is said: " Where there are *no witnesses* to the accident, evidence of the *habitual care* of the deceased is often admitted on the question of his exercise of due care at the time of the accident." (6 Thompson on Negligence, § 7140.)

Mr. Greenleaf says: " A habit of doing a thing is naturally of probative value as indicating that on a particular occasion the thing was done as usual, and, if clearly shown as a definite course of action, is constantly admitted in evidence. Nevertheless there are some instances in which habit may be thought to be obnoxious to the character rule, particularly a habit of intoxication or intemperance, and a habit of carelessness or negligence; and on these points there is no uniformity of ruling. The existence of a design, plan or intention to do a thing is of some probative value to show that it was done and instances of its use constantly recur." (1 Greenleaf on Evidence [16th ed.], §§ 14j and 14k.)

The weight of authority seems to be against admitting evidence of general conduct under proven circumstances to show conduct of the same kind under similar circumstances on a particular occasion, when there were eye-witnesses of the occurrence, including the person injured if

he survived the accident. We are not now called upon to decide whether evidence of the habits of a decedent in crossing railroads is competent when there is no eye-witness of the event. In this case there were four witnesses who saw what happened and described the conduct of the deceased as he walked to his death. A question of evidence, to some extent, is a question of sound policy in the administration of the law. Sometimes it is necessary to weigh the probative force of evidence offered, compare it with the practical inconvenience of enforcing a rule to admit it and decide whether, as matter of good policy, it should be admitted. Uniform conduct under the same circumstances on many prior occasions may be relevant as tending somewhat to show like conduct under like circumstances on the occasion in question. All relevant evidence, however, is not competent. Hearsay, although relevant, is held incompetent from public policy, because there is safer and better evidence to establish the fact. Parol evidence to vary a written agreement is relevant but incompetent, because sound policy requires that the writing should be presumed to express the final agreement of the parties. So, assuming the evidence in question to be relevant, I think it should be held incompetent under the circumstances, because its probative force does not outweigh the inconvenience of a multitude of collateral issues not suggested by the pleadings, the trial of which would take much time, tend to create confusion and do little good. As was said by Chief Justice PETERS in *Chase* v. *Maine Central R. R. Co.* (*supra*): "In many litigations, under such a test, there would arise a wager of character which would as unfairly settle the dispute as did formerly the wager of battle." The rule of the average life is care, or else it would not long continue, yet the average man is conscious that he is not always careful, and, hence, habit on general occasions is uncertain evidence of care on a particular occasion. It is not enough of itself to establish the fact sought to be proved and at

the most simply bears upon the probability. Habit is an inference from many acts, each of which presents an issue to be tried and necessarily involves direct and naturally invites cross-examination. The circumstances surrounding each act present another issue, and thus many collateral issues would be involved which would not only consume much time, but would tend to distract the jury and lead them away from the main issue to be decided. From the want of previous notice the other party would not be prepared to meet such evidence, and after all the testimony of this character was in the fact would remain that, as no one is always careful, the subject of inquiry, although careful on many occasions, might have been careless on the occasion in question.

We are of the opinion that the evidence objected to should be held incompetent, and that under the circumstances the error in admitting it should not be disregarded as harmless, for it may have led to the verdict.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HISCOCK, CHASE and COLLIN, JJ., concur; WILLARD BARTLETT, J., concurs on second ground discussed in the opinion.

Judgment reversed, etc.