JOSIAH B. HARTMAN v. TOLEDO RYS. & LIGHT CO.

**Circumstantial Evidence of Habit of Person Rejected When Primary Evidence of Fact is Available.**

Evidence of the habit of a person being circumstantial and secondary in character, its admission is largely within the discretion of the court, and when there is primary evidence of a fact desired to be proven, there is ordinarily no necessity for resort to secondary evidence to establish the fact, and in the absence of some necessity for the introduction of such evidence to meet some exigency of proof, it will be rejected.

[Syllabus by the court.]

ERROR.

*C. H. Masters* and *Kohn, Northrup & McMahon,* for plaintiff in error.

*Tracy, Chapman & Welles,* for defendant in error.

**CHITTENDEN, J.**

The plaintiff brought an action to recover damages because of personal injuries claimed to have been sustained through the negligence of the defendant. The jury returned a verdict in favor of the defendant and judgment was entered thereon.

Hartman v. Toledo Rys. & L. Co.

A reversal of this judgment is asked in this court on the ground that certain material evidence offered on behalf of the plaintiff was excluded by the trial court.

On November 8, 1913, the plaintiff was a passenger upon one of the cars of the defendant company. The plaintiff claims that when he was within about a block from the place where he desired to alight, he step into the front vestibule of the car preparatory to leaving the car when it should make a stop at the street where he desired to get off. He alleges that when he entered the vestibule of the car the motorman operating the car, "intentionally, negligently and carelessly struck and pushed him with great force so that he was violently thrown from said car upon the brick pavement and while the car was still in motion," and that as a result thereof he received the injuries for which he seeks to recover. It is shown by the evidence that the plaintiff was formerly an employe of the defendant and a friend of the motorman operating the car.

The plaintiff testifies, in substance, that when he went into the vestibule he was struck on the neck by the motorman and was thereby thrown from the car. The testimony of one other witness was to the effect that thereafter she heard the motorman say that he didn't mean to push that man off and it was only an accident if he did push him off. Another witness testifies that he heard the motorman say, "I didn't mean to hit him." The defendant offered the evidence of the motorman who denied that he struck, slapped or pushed the plaintiff, and denied making the statements attributed to him, and said that he saw a shadow which caused him to believe that the plaintiff was falling, and that he attempted to reach him to prevent the fall but was unable to do so. The defendant also offered the evidence of several eye-witnesses who testified that the motorman did not slap, strike or push the plaintiff, but that the plaintiff evidently lost his balance as the car was passing through a curve of a switch, and that as he began to fall the motorman reached out with the evident intention of attempting to prevent him from falling.

The plaintiff when putting in his evidence in chief undertook to prove that the motorman had a general habit of slapping

or striking his friends and acquaintances when speaking to them. One witness who had known the motorman for several years was asked this question: "You may state what you have observed Humphries (the motorman) do while he was running the car and you were conductor on it, in slapping persons upon the back or other parts of their person when speaking to them." The objection to this question was sustained. Counsel for the plaintiff stated to the court that he claimed the evidence was competent in corroboration of the act of the motorman complained of, and offered to prove by the witness and other witnesses that this motorman's general habit and custom, both while operating his car and at other times while off duty, was to slap or strike a man at times very hard when speaking to him. It is claimed that the exclusion of this evidence was erroneous and prejudicial to the rights of the plaintiff.

In support of this contention counsel for plaintiff quote from the opinion of the Supreme Court of Ohio in the case of *Rumbaugh* v. *McCormick*, 80 Ohio St. 211 [88 N. E. 410], found upon page 217. The language quoted and said to be applicable to this case consists of a quotation from Wigmore on Evidence, Sec. 68, and is as follows:

"The character or disposition of an animal is no less relevant than that of a human being, as indicating his probable conduct on a particular occasion, and it is open to none of the objections of auxiliary policy which affect the use of a party's character. It is therefore commonly conceded to be admissible. The hesitation sometimes observed in the rulings has been due to the time at which the disposition is predicated in the offer; but here, as with human character, the existence of a trait at a given time is evidence that it existed also for a reasonable time before and afterwards, and within liberal limits should therefore be received."

An examination of the case cited discloses that the Supreme Court did not have under consideration and was not discussing the admissibility of evidence of the kind and character sought to be introduced by the plaintiff in this case. In the case under consideration by the Supreme Court the plaintiff sought to recover damages inflicted upon a flock of sheep alleged to have

Hartman v. Toledo Rys. & L. Co.

been caused by a dog owned and harbored by the defendant who lived upon an adjoining farm. It was there held competent to prove that the dog had acquired the habit of attacking sheep, in support of the disputed allegation that he attacked and injured sheep on the particular occasion.

It has become quite well settled that in certain actions evidence of character and disposition is competent, and this is especially true when applied to animals. It is not claimed in this case that the motorman was of a violent or dangerous disposition or character, and the evidence sought to be introduced was not for the purpose of making any such proof. The distinction between character and disposition of individuals, and of a habit, is apparent and is made by text writers treating the subject of evidence. The quotation from Wigmore on Evidence, above mentioned, is from a paragraph treating of the character of animals, and in the course of the paragraph quoted Mr. Wigmore refers to Sec. 60 of the same work which also treats of character. That author's treatment of the subject of habit is found in Sec. 92. He recognizes that under certain circumstances a person's habit is of some probative value. Two of the cases cited by him have more to do with the subject of custom than of habit. The other case cited by him, *State v. Railway*, 52 N. H. 528, 532, more definitely deals with the subject of habit. The New Hampshire case has sometimes been taken as the basis for a statement that habit is competent evidence. We call attention, however, to the case of *Parkinson v. Nashua & L. Ry.* 61 N. H. 416. The opinion in that case begins with this statement:

"Although it is quite generally held elsewhere in actions for negligence, that evidence of other specific instances of negligence on the part of either party is not competent, because raising a collateral issue, yet in this state a different rule prevails and has become established in cases where the evidence is conflicting; and it is here held to be competent to show that the party charged with negligence had performed or omitted the same act in the same way before, as tending to show that he did or omitted the act at the time in question, on the ground that a person is more likely to do a thing in a particular way, as he is in the habit of doing or not doing it."

The court then cites *State* v. *Railway, supra,* from which Mr. Wigmore quotes, together with other New Hampshire cases. It will be observed that the Supreme Court of New Hampshire recognizes that the rule laid down in that state is not in accord with the current of authority in this country. Mr. Wigmore further states in Sec. 92 that:

"There is, however, much room for difference of opinion in concrete cases owing chiefly to the indefiniteness of the motion of habit or custom. If we conceive it as involving an invariable regularity of action, there can be no doubt that this fixed sequence of acts tends strongly to show the occurrence of a given instance. But in the ordinary affairs of life a habit or custom seldom has such an invariable regularity. Hence it is easy to see why in a given instance something that may be loosely called habit or custom should be rejected because it may not in fact have sufficient regularity to make it probable that it would be carried out in every instance or in most cases. Whether or not such sufficient regularity exists must depend largely on the circumstances of each case."

He then calls attention to the difficulties that arise in connection with such evidence because of its close relation to that of character, and of its becoming obnoxious to the rule against the use of a party's character in civil cases.

The entire subject now under consideration is learnedly discussed in 4 Chamberlayne Modern Law of Evidence, Chap. 46, Sec. 3150.

It is obvious that evidence of habit is circumstantial and secondary in character, and is within the rule that its admission is largely within the discretion of the presiding judge. When there is primary evidence of a fact desired to be shown, there is ordinarily no necessity for resort to secondary evidence to establish that fact. Under such circumstances the introduction of secondary evidence involves the danger of misleading or confusing the jury by the raising of collateral issues. The trial court will consider this danger, together with any other circumstances affecting his discretion, in passing upon the admissibility of such evidence. 4 Chamberlayne, Modern Law of Evidence, Secs. 3154 and 3159; 6 Thompson, Commentaries on the Law of

Negligence, Sec. 7883. The introduction of evidence that involves collateral issues always involves the danger of trying out not what happened on the particular occasion that furnishes the basis for the suit, but what happened on other occasions. Therefore, in the absence of some necessity for the introduction of such evidence, it will be rejected. As said by Mr. Chamberlayne, Sec. 3198:

"In other words, where there is direct evidence to the same effect, or in general when evidence of habit is not required to meet some exigency of proof, the propriety of rejecting the evidence seems an administrative common-place in most cases."

After further discussion of this subject in the section last cited, quotation is made from the decision of the Court of Appeals of New York in the case of *Zucker* v. *Whitridge*, 205 N. Y. 50 [98 N. E. 209]. In that case evidence of the habit of the injured person was sought to be introduced; but we are unable to see any proper distinction to be made in the principle governing the admission of habit of the injured person and of the habit of the defendant or its employes. The Court of Appeals, after an exhaustive review of the cases upon the subject and of several text books, reached the conclusion that the "weight of authority seems to be against admitting evidence of general conduct under proven circumstances to show conduct of the same kind under similar circumstances on a particular occasion, when there were eye-witnesses of the occurrence, including the person injured if he survived the accident." They expressly declined to express an opinion as to the competency of such evidence when there are no eye-witnesses of the event. We think proper to quote at some length from the concluding statements in that opinion:

"A question of evidence, to some extent, is a question of sound policy in the administration of the law. Sometimes it is necessary to weigh the probative force of evidence offered, compare it with the practical inconvenience of enforcing a rule to admit it and decide whether, as matter of good policy, it should be admitted. Uniform conduct under the same circumstances on many prior occasions may be relevant as tending somewhat to show like conduct under like circumstances on the occasion in question. All relevant evidence, however, is not competent.

Hearsay, although relevant, is held incompetent from public policy, because there is safer and better evidence to establish the fact. Parol evidence to vary a written agreement is relevant but incompetent, because sound policy requires that the writing should be presumed to express the final agreement of the parties. So, assuming the evidence in question to be relevant, I think it should be held incompetent under the circumstances, because its probative force does not outweigh the inconvenience of a multitude of collateral issues not suggested by the pleadings, the trial of which would take much time, tend to create confusion and do little good. As was said by Chief Justice Peters in *Chase* v. *Maine Central Ry.* (*supra*) : 'In many litigations, under such a test, there would arise a wager of character which would as unfairly settle the dispute as did formerly the wager of battle.' The rule of the average life is care, or else it would not long continue, yet the average man is conscious that he is not always careful, and, hence, habit on general occasions is uncertain evidence of care on a particular occasion. It is not enough of itself to establish the fact sought to be proved and at the most simply bears upon the probability. Habit is an inference from many acts each of which presents an issue to be tried and necessarily involves direct and naturally invites cross examination. The circumstances surrounding each act present another issue, and thus many collateral issues would be involved which would not only consume much time, but would tend to distract the jury and lead them away from the main issue to be decided. From the want of previous notice the other party would not be prepared to meet such evidence, and after all the testimony of this character was in, the fact would remain that, as no one is always careful, the subject of inquiry, although careful on many occasions, might have been careless on the occasion in question.''

The circuit court of this district reached a similar conclusion in the case of *W. & L. E. R. R. Co.* v. *Parker, Adm'r,* 29 O. C. C. 1 (9N. S. 28), and a like result was arrived at by the circuit court of the seventh circuit in *Pennsylvania Co.* v. *Trainer, Adm'r,* 5 Circ. Dec. 519 (12 R. 66). See also, *Baltimore & Ohio Ry.* v. *Van Horn, Adm'x,* 12 Circ. Dec. 106 (21 R. 337).

Hartman v. Toledo Rys. & L. Co.

The bill of exceptions discloses the evidence of several eye-witnesses of the accident to the plaintiff. We are unable to say that the trial court was guilty of any abuse of discretion in excluding the evidence tendered, even were it conceded that such evidence of habit might under some circumstances be admissible. We are furthermore of opinion that in view of the direct evidence, the probative effect of such circumstantial evidence of habit would not have been sufficient to have justified the jury in returning a verdict in favor of the plaintiff.

After a careful review of the record, and a somewhat extensive examination of authorities, we are unable to find any prejudicial error in the record, and the judgment will therefore be affirmed.