IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70667-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RUBEN AYON-ROSALES, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 6, 2014 |

SCHINDLER, J. — Ruben Ayon-Rosales seeks reversal of his jury conviction for one count of rape in the second degree. Ayon-Rosales contends the trial court erred in denying his request to give a unanimity instruction and admitting improper testimony of guilt. Because the evidence establishes a continuing course of conduct, a unanimity instruction was not required, and even if the testimony was improper, it was harmless beyond a reasonable doubt. We affirm.

FACTS

Ruben Ayon-Rosales lived in Mexico and began dating M.B. when she was 16-years-old. When M.B. was approximately 20-years-old, she came to Seattle to join Ayon-Rosales. Ayon-Rosales and M.B. were in a relationship for approximately six years. The couple lived together in a studio apartment on Cherry Street and both worked. Ayon-Rosales and M.B. made payments toward the purchase of a car.

The romantic relationship between M.B. and Ayon-Rosales ended in 2011. Ayon-Rosales was deported to Mexico in the spring of 2011. Around the same time, M.B. began dating Brandon Gregory, and M.B. told Ayon-Rosales she had a new boyfriend.

M.B. gave Gregory a key to the Cherry Street apartment. The couple spent weekends at the apartment together. At some point, M.B. and Gregory went to Ayon-Rosales's mother's home to retrieve the car. M.B. and Gregory both made payments on the car.

Ayon-Rosales returned to Seattle in September 2011. On September 23, he called M.B. to tell her he planned to come to the apartment to pick up some documents. When Ayon-Rosales arrived at the apartment, M.B. let him in but remained in the doorway. Ayon-Rosales persuaded M.B. to come inside the apartment. When she did, he demanded that she give him his "things," including the key to the car. M.B. told Ayon-Rosales he would have to come to her workplace to get the key.

Ayon-Rosales was angry M.B. let her new boyfriend drive the car. Ayon-Rosales hit M.B. in the mouth with his fist and turned up the volume on the stereo. Ayon-Rosales then hit M.B. in the stomach several times because he believed she was pregnant. When M.B. tried to leave the apartment, Ayon-Rosales grabbed her by the hair. Ayon-Rosales told M.B if she "wasn't with him, [she] wouldn't be with anybody else." In an effort to stop him from hitting her, M.B. told Ayon-Rosales she would be with him. After Ayon-Rosales told M.B to go clean herself up, M.B. went to take a shower.

After she got out of the shower, Ayon-Rosales would not let M.B. get dressed. Ayon-Rosales told M.B. he wanted to have oral sex. M.B. said no. Ayon-Rosales had a knife from the kitchen in his hand and told M.B. he would cut her and she would die. Ayon-Rosales then pulled down his pants, shoved M.B.'s head toward him, and forced her to put his penis in her mouth. M.B. said she could not perform oral sex because her mouth was hurt and swollen. Ayon-Rosales then pushed M.B. onto the futon couch and told her to spread her legs. M.B. again told him no, but Ayon-Rosales had vaginal intercourse with her. During intercourse, Ayon-Rosales continued to hit M.B. Afterward, Ayon-Rosales hugged M.B., asked her to forgive him, and told her he was going to take her away.

At this point, Gregory entered the apartment with his key. Gregory saw that both M.B. and Ayon-Rosales were naked. At first, Gregory thought he had caught M.B. cheating on him, but then he noticed "how she looked." Gregory said M.B. looked like she had been crying and when she saw him, M.B. started crying and said, " 'Help me.' "

Ayon-Rosales told Gregory that he was M.B.'s husband. Gregory said he was going to call the police. Ayon-Rosales laughed, "like it was a joke," put his clothes on, took M.B.'s telephone and her debit card, and ran out of the apartment. Gregory chased after Ayon-Rosales.

M.B. went to a neighbor's apartment to call the bank and cancel her debit card. The neighbor called 911. Police officers arrived and took M.B. to Harborview Medical Center.

The State charged Ayon-Rosales with one count of rape in the second degree. The State alleged Ayon-Rosales engaged in "sexual intercourse" with M.B. by "forcible compulsion" in violation of RCW 9A.44.050(1)(a).

A number of witnesses testified at the trial, including M.B., the neighbor who called 911, Gregory, several police officers, health care providers, and a forensic scientist. The swabs collected during the medical examination at Harborview contained a mixed profile consistent with the DNA[1] of both M.B. and Ayon-Rosales. The forensic scientist testified that the probability of a random match was one in 150 trillion. Ayon-Rosales did not testify.

The defense asked the court to give a unanimity jury instruction because there was evidence of "two potential acts of sexual intercourse." The court rejected the request to give a unanimity instruction on two grounds. The court ruled the definition of sexual intercourse created alternative means of committing the crime, and the evidence supported both alternative means. The court also ruled the evidence established more than one act, but those acts transpired "within a relatively short period of time," constituting a continuous course of conduct.

The defense did not dispute that Ayon-Rosales and M.B. had sexual intercourse. The defense argued that M.B. would not admit she had consensual sex with Ayon-Rosales because she did not want to jeopardize her relationship with Gregory, who was a United States citizen and a "much better deal."

---

[1] Deoxyribonucleic acid.

The jury found Ayon-Rosales guilty of rape in the second degree and by special verdict found the crime involved domestic violence. The court imposed a standard range sentence.

ANALYSIS

Unanimity Instruction

Ayon-Rosales contends the trial court violated his constitutional right to a unanimous jury by denying his request for a unanimity instruction.

Ayon-Rosales contends the trial court erred in ruling that the definition of "sexual intercourse" created alternative means. The State concedes the court erred. We accept the State's concession as well taken. While the definition of "sexual intercourse" includes more than one type of intercourse, definitions do not create alternative means or implicate jury unanimity concerns. See RCW 9A.44.010(1); RCW 9A.44.050(1)(a); State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007).

Next, Ayon-Rosales contends the court erred in denying his request for a unanimity instruction on the grounds that there was a continuous course of conduct.

Criminal defendants in Washington have a right to a unanimous jury verdict. CONST. art. 1, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the State presents evidence of several acts that could constitute the crime charged, the jury must unanimously agree on which act constituted the crime. State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). To ensure jury unanimity, the State must either elect the act on which it relies, or the court must instruct the jury to unanimously agree that at least one particular act constituting the charged crime has

been proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411; see also State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

But no election or unanimity instruction is required if the evidence establishes a "continuing course of conduct." Petrich, 101 Wn.2d at 571. We review the facts in a commonsense manner to determine whether criminal acts consist of a continuing course of conduct. Petrich, 101 Wn.2d at 571. Evidence that the charged conduct "occurred at different times and places tends to show that several distinct acts occurred." State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). Evidence that the defendant engaged "in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct." Fiallo-Lopez, 78 Wn. App. at 724.

Viewed in a commonsense manner, the evidence establishes a continuing course of conduct. Ayon-Rosales forced M.B. to have oral sex but when she could not do so, he pushed her onto the futon couch and forcibly had vaginal sex with her. The acts were against the same victim, occurred in an unbroken sequence of events, and occurred at the same location with the intent to secure the single objective of sexually assaulting M.B. Because the offense was a continuing course of criminal conduct, the court did not err in refusing to give a unanimity instruction.

Nonetheless, Ayon-Rosales claims the court should have conducted a double jeopardy unit of prosecution analysis in determining whether there is a continuing course of conduct. A double jeopardy analysis is distinct from whether there is a continuing course of conduct that precludes a unanimity instruction. See State v. French, 157 Wn.2d 593, 611, 41 P.3d 54 (2006). Further, in State v. Campbell, 69 Wn.

6

App. 302, 311-13, 848 P.2d 1292 (1993), reversed on other grounds by State v. Campbell, 125 Wn.2d 797, 888 P.2d 1185 (1995), we considered and rejected the same argument. The defendant Campbell argued that he was entitled to a unanimity instruction because the evidence supporting his single charge "showed 21 separate instances of conduct which could have formed the basis for separate counts." Campbell, 69 Wn. App. at 311. This court disagreed.

> When the evidence indicates that several distinct criminal acts may be committed but the defendant is charged with only one count,
>
> > [t]he State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

Campbell, 69 Wn. App. at 311[2] (quoting Petrich, 101 Wn.2d at 572).

Ayon-Rosales's reliance on State v. Tili, 139 Wn.2d 107, 985 P.2d 365 (1999), to argue a unanimity instruction was required is misplaced. In Tili, the Supreme Court addressed whether the convictions for three counts of rape in the first degree for three distinct acts of penetration violated double jeopardy. Tili, 139 Wn.2d at 112-13. The court rejected the argument that the legislature did not intend each act of penetration to constitute a single unit of prosecution. The court held that for purposes of double jeopardy, the unit of prosecution is "sexual intercourse." Tili, 139 Wn.2d at 119. As the State points out, the double jeopardy unit of prosecution analysis defines the maximum but not the minimum number of convictions that may be based on the defendant's

---

[2] Alteration in original.

7

conduct. See State v. Calle, 125 Wn.2d 769, 777 n.3, 888 P.2d 155 (1995) (State may file and prosecute multiple counts where the evidence supports the charges, as long as convictions are not entered in violation of double jeopardy). The fact that it is "theoretically possible" for the State to have filed two charges of rape does not mandate a unanimity instruction in all cases.

We also reject Ayon-Rosales's argument that the decisions in State v. Furseth, 156 Wn. App. 516, 233 P.3d 902 (2010), and State v. Brown, 159 Wn. App. 1, 248 P.3d 518 (2010), are inconsistent and that Brown was wrongly decided.

In Furseth, the defendant Furseth was charged with one count of possessing depictions of minors engaged in sexually explicit conduct. Furseth, 156 Wn. App. at 518. The State introduced into evidence multiple images stored on Furseth's computer. Furseth, 156 Wn. App. at 518-19. The jury convicted him as charged. On appeal, Furseth challenged his conviction on the basis that the jury was not instructed that it had to unanimously agree as to which image found in his possession constituted child pornography. Furseth, 156 Wn. App. at 519. We held that "because the State could not have charged Furseth with multiple, separate counts of possession of child pornography, evidence that he possessed multiple images does not constitute evidence of multiple criminal acts," and the court did not err in refusing to give a unanimity instruction. Furseth, 156 Wn. App. at 522. Because Furseth was not a multiple acts case, the decision does not address the applicability of the continuing course of conduct exception to the Petrich instruction requirement.

In Brown, the defendant argued the State took an inconsistent position by charging him with multiple felony violations of a no-contact order but then arguing he

8

was not entitled to a unanimity jury instruction under the continuing course of conduct exception. Brown, 159 Wn. App. at 13-14. We disagreed, and held the record showed the continuing course of conduct exception applied. Brown, 159 Wn. App. at 15.

Gregory's Testimony

In the alternative, Ayon-Rosales claims he was denied a fair trial because the trial court admitted improper testimony of guilt.

As a general rule, a witness may not offer opinion testimony regarding the guilt or veracity of the defendant. Such testimony invades the province of the jury and is unfairly prejudicial to the defendant. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001).

On cross-examination, defense counsel asked Gregory if it was a "traumatic" experience to walk in on M.B. and Ayon-Rosales. On redirect, the prosecutor asked Gregory, "How has it been a traumatic experience for you?" Gregory responded, "[B]ecause it was the first time ever someone got raped in front of me." Defense counsel objected but did not move to strike the testimony or request a curative instruction.

> [DEFENSE COUNSEL]: Objection.
> THE COURT: Well, the context is given in a statement to the police detective. That was later.
> [PROSECUTOR]: It's in connection with that.
> THE COURT: That doesn't expand the scope as broadly as the present time.
> [PROSECUTOR]: I will move on.

Ayon-Rosales argues Gregory's testimony that "it was the first time ever someone got raped in front of me" is improper opinion testimony of guilt. The State asserts Gregory testified to what he observed, and even if admission of the testimony

9

was error, it was harmless. We agree any error was harmless. Under the constitutional harmless error standard, we will not vacate the jury's finding if it appears beyond a reasonable doubt that the alleged error did not affect the verdict. State v. Monday, 171 Wn.2d 667, 680, 257 P.3d 551 (2011).

On direct, Gregory testified that when he walked into the apartment, Ayon-Rosales and M.B. were both naked and he thought he had "caught them in the act." But Gregory said that then he noticed M.B. was bleeding, and had been hit in the eye and had a "broken lip." Gregory testified that M.B. looked like she had been crying and when she saw him, M.B. began crying again and said, " 'Help me.' " Gregory also testified that after chasing Ayon-Rosales and catching up to him, Ayon-Rosales said, "[I]f you touch me, you know, you will get arrested." Without objection, Gregory testified that he told Ayon-Rosales, "[Y]ou just committed like rape."

M.B.'s testimony that Ayon-Rosales used physical force and threats to have sex with her was also supported by the testimony of other witnesses. After Gregory and Ayon-Rosales ran out of the apartment, M.B. went to a neighbor's apartment for help. M.B. told the neighbor that she had been attacked and raped. The neighbor testified that M.B.'s hands were shaking and her voice was trembling, and described her "whole demeanor" as "very terrified." Police officers who responded to the 911 call described M.B. as visibly "distraught" and "shook up." When M.B. discussed the incident with a hospital social worker, M.B. was "anxious" and "tearful." A number of witnesses also described M.B.'s injuries. In light of the overwhelming uncontroverted testimony, we

10

conclude beyond a reasonable doubt that even if admission of Gregory's statement was error, it did not affect the verdict.

We affirm the jury conviction of rape in the second degree.

WE CONCUR: