FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8: 37

STATE OF WASHINGTON

BY_____
      DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>REGINALD JOHN PAUL CHIEF GOES OUT,<br><br>Appellant. | No. 42289-1-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, C.J. — A jury found Reginald John Paul Chief Goes Out guilty of seven crimes: unlawful imprisonment (Count I), two counts of first degree robbery (Counts II and IV), two counts of second degree assault (Counts III and VII), one count of first degree burglary (Count V), and one count of unlawful display of a weapon (Count VI), with firearm enhancements on all but Count VI. Chief Goes Out appeals his convictions and sentence, arguing that (1) the trial court violated his right to be free from double jeopardy by failing to merge the robbery and assault convictions charged in Counts II and III, and by failing to merge the robbery and unlawful display of a weapon convictions charged in Counts IV and VI; (2) the trial court violated his right to a unanimous verdict by failing to instruct the jury that it must be unanimous as to the act supporting the assault charged in Count VII; (3) there was insufficient evidence to prove the robbery and assault charged in Counts IV and VII based on the instructions given; (4) there was insufficient evidence to convict him of the robbery, burglary, assault, and unlawful display of a weapon charged in Counts IV, V, VI, and VII; and (5) the trial court erred

by failing to rule that the robbery and assault charged in Counts II and III were the same criminal conduct.[1]

In a statement of additional grounds (SAG), Chief Goes Out further argues (1) the trial court gave an erroneous unanimity instruction as to the special verdicts against him; (2) the trial court violated his right to a speedy trial; and (3) he received ineffective assistance of counsel based on counsel's failure to raise the foregoing two issues.

We affirm Chief Goes Out's convictions and sentence.

## FACTS

Chief Goes Out was convicted based on two separate incidents that occurred on the same day: the "Fairbanks Street incident" and the "Dock Street incident." During the Fairbanks Street incident, he was an accomplice to the robbery of Raymond Allen (Count IV), to burglary (Count V), to the unlawful display of a weapon (Count VI), and to the assault of Brandi Allen (Count VII). He was convicted of the crime of unlawful display of a weapon as a lesser included offense to the second degree assault of Christina Roushey. During the Dock Street incident, Chief Goes Out was a principal or accomplice to the unlawful imprisonment of Scott Little (Count I), to the robbery of Little (Count II), and to the assault of Little (Count III). The jury returned special verdicts finding that Chief Goes Out was armed with a firearm in the commission of each offense except for the unlawful display of a weapon.

---

[1] Chief Goes Out also argues that the trial court violated his right to be free from double jeopardy by failing to strike his burglary conviction (Count V) from his judgment and sentence after ruling that it merged with the robbery charged in Count IV. But the trial court issued an order striking Count V from Chief Goes Out's judgment and sentence. His argument is accordingly moot and we do not consider it. *State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (an issue is moot when a court can no longer provide effective relief).

A.   *The Fairbanks Street Incident*

The Fairbanks Street incident occurred at the family home of Raymond Allen and his sister, Brandi Allen, on Fairbanks Street in Tacoma.[2] That afternoon, Raymond returned home and parked a truck belonging to his employer near his house.

Less than an hour after returning home, Raymond saw two men, later identified as Chief Goes Out and his accomplice, Ricardo Tirado Vailtine, walking up the street. The men were proceeding slowly and did not look tired from the steep hill. The men approached Raymond's truck and stood looking at it. It appeared to Raymond that the men had a short conversation while looking at the truck.

Shortly thereafter, Chief Goes Out approached the front door of the Allen residence, leaning against the house like he was resting, and acting out of breath. Chief Goes Out asked Raymond for a cigarette; Raymond said he did not have one. Vailtine then approached and cocked a pistol, saying, "But check this out." Report of Proceedings (RP) (Apr. 13, 2011) at 152. Vailtine demanded the keys to Raymond's truck but Raymond did not take him seriously at first, not knowing whether the gun was real. Vailtine then pointed the gun toward Raymond's face and fired past him.

Brandi and her friend, Christina Roushey, were in the house's living room. When Roushey and Brandi saw the gun, they both turned and ran; they both heard a gunshot when they reached the house's kitchen. Raymond believed Brandi and Roushey both ran outside through the back door, but according to Brandi, Brandi stayed in the kitchen.

---

[2] For ease of reference, we refer to Raymond and Brandi Allen by their first names, intending no disrespect.

3

Raymond told Vailtine and Chief Goes Out that he would get the keys and as he backed toward his bedroom to get them, Vailtine and Chief Goes Out followed Raymond into the house. Raymond gave the keys to Vailtine, who tossed the keys to Chief Goes Out and told him, "Go check that out." RP (Apr. 13, 2011) at 160. Chief Goes Out left with the keys.

Vailtine then demanded Raymond's wallet, but Raymond told Vailtine he did not have anything and Vailtine then left the house. Raymond then went to check on Roushey and Brandi. Raymond then went to close the front door, which was still open, and saw Vailtine coming back inside. Raymond retreated into his bedroom.

From his bedroom, Raymond saw Vailtine in the living room yelling, "You think I'm playing? You think this is a game?" RP (Apr. 13, 2011) at 168. He could not tell if the yelling was directed at anyone in particular, but Vailtine looked upset. According to Brandi, she was in the kitchen and Vailtine pointed the gun at her and threatened to shoot her. Vailtine then shot a television in the living room four to five times.

Thirty seconds to a minute later, Raymond came out of his room and went to close and lock the front door. Raymond saw Vailtine and Chief Goes Out sitting in the truck. The truck had an unusual keyless ignition, and it took Vailtine and Chief Goes Out about a minute to get it started and drive it away.

B.     *The Dock Street Incident*

Later that same day, Scott Little was in his car parked near Delin Docks in Tacoma. As he was ready to back out of the parking lot and leave, he heard a bang and saw that there was a hole in his windshield. Two men, later identified as Vailtine and Chief Goes Out, then ran up to

the car, screaming at Little to get out of the car. Vailtine had a gun, and Chief Goes Out moved his hand to his waistband in a way that suggested he was hiding a gun under his shirt.

Vailtine hit Little in the face with the gun multiple times when Little was in the front seat of the car, as he was getting out of the car, and after he got out of the car. He was then made to get in the back of the car. Vailtine got in the back as well, pointing the gun at Little while Chief Goes Out drove the car. Vailtine also struck Little with the gun while the car was moving. Little eventually managed to roll down the window and signal a nearby police officer for help.

## ANALYSIS

### I. MULTIPLE ACTS UNANIMITY INSTRUCTION

Chief Goes Out first argues that the trial court violated his right to a unanimous jury verdict as to the assault of Brandi (Count VII) by failing to instruct the jury that it must be unanimous which act supported the charge. We disagree because the assault was a continuing course of conduct.

We review alleged error in jury instructions de novo. *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010). When the State presents evidence of multiple acts that could form the basis of the crime charged, the State must either elect to rely on just one of the acts, or the jury must be instructed to agree unanimously on the specific act that supports a finding of guilt (a *Petrich*[3] instruction). *State v. Coleman*, 159 Wn.2d 509, 511-12, 150 P.3d 1126 (2007).

---

[3] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1998).

However, no *Petrich* instruction is required when the State alleges acts that are part of a continuing course of conduct.[4] *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989).

The parties agree that the jury may have considered two acts when deciding the charge for assaulting Brandi: Vailtine's initial act of putting the gun in her brother's face and firing it as Brandi was running away, and Vailtine's later act of pointing the gun at Brandi and threatening to shoot her. The parties further agree that the State did not elect to rely on one act or the other. But the State argues that both acts were a continuing course of conduct.

In determining whether multiple acts were part of a continuing course of conduct, we consider (1) the time separating the acts, and (2) whether the acts involved the same parties, location, and ultimate purpose. *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). A continuing course of conduct requires "an ongoing enterprise with a single objective." *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).

Without citing authority, Chief Goes Out argues that the acts were not part of a continuing course of conduct because the first act was "directed primarily" at Raymond, not Brandi. Division One of our court recently rejected this argument. *State v. Thompson*, 169 Wn. App. 436, 475, 290 P.3d 996 (2012). We reject this argument as well. Brandi was a victim of both acts, which both occurred during a short period of time and had the same purpose of accomplishing the robbery, making the two assaults part of a continuous course of conduct.

Chief Goes Out contests whether both acts were committed for the same purpose, arguing that Vailtine committed the second act, pointing the gun at Brandi, "gratuitously." Reply Br. of

---

[4] The State argues that Chief Goes Out may not raise the lack of a *Petrich* instruction for the first time on appeal. But the failure to give a *Petrich* instruction in a multiple acts case may be raised for the first time on appeal. *State v. Kiser*, 87 Wn. App. 126, 129, 940 P.2d 308 (1997); *State v. Fiallo-Lopez*, 78 Wn. App. 717, 725, 899 P.2d 1294 (1995).

Appellant at 4. We disagree. Raymond testified that the truck had an unusual keyless ignition. And the fact that Vailtine returned to the house, acting upset and shouting, suggests that he returned to threaten Brandi because he initially did not believe he had been given the proper keys. Although Vailtine and Chief Goes Out had already obtained the truck keys when Vailtine committed the second act, there was sufficient circumstantial evidence that Vailtine did not believe he had been given the proper keys, which motivated the second act.

Because the two acts of assault against Brandi were part of a continuing course of conduct, it was unnecessary for the trial court to give a *Petrich* instruction. Chief Goes Out's argument to the contrary fails.

## II. SUFFICIENCY OF THE EVIDENCE

Chief Goes Out next challenges the sufficiency of the evidence on two grounds. He first argues that the jury instructions required the State to prove that Chief Goes Out was a principal, not an accomplice, as to the robbery of Raymond and assault of Brandi (Counts IV and VII), which the State failed to do. He further argues that the State presented insufficient evidence to prove that he was an accomplice to the Fairbanks Street crimes, Counts IV, V, VI, and VII. We disagree on both points.

A.    *The Jury Instructions Did Not Require Proof that Chief Goes Out Was a Principal*

Chief Goes Out argues that there was insufficient evidence to support his convictions for robbing Raymond (Count IV) and assaulting Brandi (Count VII) because the jury instructions required the State to prove that Chief Goes Out was a principal and not an accomplice on certain elements of these crimes. We disagree.

7

Under the law of the case doctrine, jury instructions not objected to become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Thus, the State assumes the burden of proving otherwise unnecessary elements included in a "to convict" instruction. *Hickman*, 135 Wn.2d at 102.

All elements of a crime must be included in a "to convict" instruction. *State v. Teal*, 152 Wn.2d 333, 338, 96 P.3d 974 (2004). But our Supreme Court has recognized that accomplice liability is not an element of an offense, and thus need not be added to a "to convict" instruction. *Teal*, 152 Wn.2d at 339. Rather, it is sufficient to include a separate instruction on accomplice liability. *Teal*, 152 Wn.2d at 339. Such a separate instruction was provided here.

However, Chief Goes Out points out that here, the State modified the "to convict" instructions for most of the charges, adding the language "or an accomplice" to some elements but not others. Specifically, the "to convict" instruction for Count IV required the State to prove that "the defendant or an accomplice" took property from the person or presence of Raymond Allen, and used force or fear to obtain or retain possession of the property. CP at 70. But it also instructed the jury it must find that "the defendant" intended to commit theft of property and was armed with a deadly weapon. And the instruction for Count VII instructed the jury that it must find that "the defendant" intentionally assaulted Brandi with a deadly weapon.

Chief Goes Out argues that because the State added the language "or an accomplice" to some of the elements in the "to convict" instructions but not others, the State was required to prove that Chief Goes Out acted as a principal on those elements where "or an accomplice" was not added. There is no dispute that the State failed to prove that Chief Goes Out was a principal

8

as to any of the Fairbanks Street crimes. But there is no authority to support Chief Goes Out's argument that the State was required to make such a showing based on the instructions here.

The law of the case doctrine requires the State to prove unnecessary elements added to a "to convict" instruction, but it does not require the State to prove unnecessary elements that were *not* added. There is no law that unnecessary elements become necessary once they are added in some places but not others.

Chief Goes Out's only legal argument on this issue is that *Teal* is distinguishable on its facts. But while the facts of *Teal* were different, nothing in that case suggests that its holding does not apply here. In *Teal*, the trial court gave a "to convict" jury instruction for robbery that omitted any reference to accomplice liability. 152 Wn.2d at 335. The Supreme Court held that because accomplice liability is not an element, it need not be added to a "to convict" instruction. 152 Wn.2d at 339. Here, in contrast, the State *did* add accomplice liability language to the "to convict" instructions, although not to every element. However, nothing in *Teal* suggests that accomplice liability *becomes* a necessary element by virtue of its being added to some of the "to convict" instructions but not others.

Chief Goes Out thus argues for us to modify existing law. But we decline to carve out an exception to *Teal* based only on the rough idea that the phrase "or an accomplice" inconsistently added to some jury instructions requires the State to prove liability as a principal. We therefore reject Chief Goes Out's argument on this point.

B.    *Evidence Was Sufficient To Prove Fairbanks Street Crimes*

Chief Goes Out next argues that the State presented insufficient evidence to prove him guilty of the Fairbanks Street crimes (Counts IV, V, VI, and VII) because there was insufficient

evidence that he was an accomplice to those crimes. We disagree because the evidence shows that Chief Goes Out both stood ready to assist and actually assisted with the crimes.

In evaluating the sufficiency of the evidence, we review the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010). "The relevant question is 'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). Circumstantial and direct evidence are equally reliable, and we defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Under RCW 9A.08.020(3)(a), a person is an accomplice to a crime when, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she . . . [s]olicits, commands, encourages, or requests such other person to commit it . . . or . . . [a]ids or agrees to aid such other person in . . . committing it." A person's mere presence or assent to a crime are insufficient to establish culpability as an accomplice. *State v. Roberts*, 80 Wn. App. 342, 355, 908 P.2d 892 (1996). An accomplice "must be ready to assist in the crime." *Roberts*, 80 Wn. App. at 356.

Under RCW 9A.56.190,

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

No. 42289-1-II

And under RCW 9A.52.020(1),

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

There was sufficient evidence that Chief Goes Out was an accomplice to the Fairbanks Street crimes. Raymond saw Chief Goes Out and Vailtine having a conversation with each other while looking at the truck. Although the two had appeared to be going slowly and did not look out of breath, Chief Goes Out approached the house and acted like he was tired from climbing the hill. He assisted the robbery, the burglary, and the assaults by distracting Raymond so that Vailtine could approach with the gun. And taking the evidence in the light most favorable to the State, Chief Goes Out also stood ready to assist, as shown by his following an armed associate into another's residence during the course of a robbery and burglary.

Moreover, Chief Goes Out assisted with the robbery yet again when he took the keys and went out to the truck with them. Chief Goes Out argues to the contrary, that once Vailtine obtained the keys from Raymond's person, the robbery was completed and Chief Goes Out did not aid it by taking the keys to the truck. But the robbery here did not consist solely of taking truck keys from Raymond's person; it included taking the truck itself from Raymond's presence. Chief Goes Out aided this robbery by taking the keys and bringing them to the truck, helping Vailtine drive the truck away.

Because Chief Goes out both actually assisted and stood ready to assist in the Fairbanks Street crimes, there was sufficient evidence to prove that he acted as an accomplice to Counts IV, V, VI and VII. His argument to the contrary fails.

11

## III. DOUBLE JEOPARDY

Chief Goes Out next argues that the trial court violated his right to be free from double jeopardy by failing to merge his convictions for the robbery of Little with the assault of Little (Counts II and III), and for the robbery of Raymond with the unlawful display of a weapon (Counts IV and VI). Because different acts proved the assault and elevated the robbery, and because the two crimes had independent purposes, we hold that the trial court was not required to merge Counts IV and VI. And because the unlawful display of a weapon and the robbery of Raymond had different victims, we further hold that the trial court was not required to merge Counts II and III.

We review a double jeopardy claim de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). The constitutional prohibition against double jeopardy forbids multiple punishments for the same offense. *State v. Kier*, 164 Wn.2d 798, 803, 194 P.3d 212 (2008). Whether two convictions are for the same offense is a question of legislative intent. *Freeman*, 153 Wn.2d at 771.

The analysis of a double jeopardy claim consists of several steps, of which merger is just one. *See Freeman*, 153 Wn.2d at 771-73. But Chief Goes Out argues only merger and we accordingly confine our analysis to that issue. RAP 10.3(6). Under the merger doctrine, when a criminal act forbidden under one statute also elevates the degree of a crime under another statute, the courts presume that the legislature intended to punish both acts through a single conviction for the greater crime. *Freeman*, 153 Wn.2d at 772-73. But offenses may still be punished separately "if there is an independent purpose or effect to each." *Freeman*, 153 Wn.2d at 773.

12

A person commits first degree robbery if: "(a) In the commission of a robbery or of immediate flight therefrom, he or she: (i) Is armed with a deadly weapon; or (ii) Displays what appears to be a firearm or other deadly weapon; or (iii) Inflicts bodily injury . . . ." RCW 9A.56.200. A person commits second degree assault if he or she "[a]ssaults another with a deadly weapon." RCW 9A.36.021(1)(c). Assault can include "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). A person commits unlawful display of a weapon if he or she carries, exhibits, displays, or draws a weapon apparently capable of producing bodily harm, including a firearm, "in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." RCW 9.41.270.

A.    *First Degree Robbery and Second Degree Assault of Little Should Not Merge*

Chief Goes Out argues that the trial court violated his double jeopardy rights by failing to merge his convictions for robbery of Little (Count II) and second degree assault of Little (Count III). We disagree because the State relied on different acts to prove the assault and elevate the robbery to the first degree, and because each act had an independent purpose.

In *Freeman*, our Supreme Court held that when a robbery is elevated to the first degree by a second degree assault, the two crimes generally merge. 153 Wn.2d at 778. But *Freeman* is distinguishable. There, Zumwalt punched the victim during a robbery. 153 Wn.2d at 770. Because this assault was used to convict Zumwalt of second degree assault, and also to elevate the robbery to the first degree, the merger doctrine applied. *See* 153 Wn.2d at 778-79.

13

Here, in contrast, the assault of Little was not used to elevate the robbery to the first degree. Instead, as the jury instructions make clear, the act elevating the robbery was Vailtine's being armed with a deadly weapon. As such, the trial court did not err by refusing to merge Counts II and III.

B.     *First Degree Robbery of Raymond and Unlawful Display of a Weapon Did Not Merge*

Chief Goes Out also argues that the trial court violated his double jeopardy rights by failing to merge his convictions for the first degree robbery of Raymond (Count IV) and unlawful display of a weapon (Count VI). Because the crimes had different victims and thus different purposes or effects, we disagree.

When two crimes each have different victims, they typically have independent purposes or effects. *See State v. Vladovic*, 99 Wn.2d 413, 421, 662 P.2d 853 (1983). Washington courts have thus recognized that crimes with different victims will not merge. *See, e.g., Vladovic*, 99 Wn.2d at 421-22; *State v. McJimpson*, 79 Wn. App. 164, 177, 901 P.2d 354 (1995).

Here, Count IV charged Chief Goes Out with robbing Raymond. And Count VI charged Chief Goes Out with the second degree assault of Roushey. While the unlawful display of a weapon instruction itself did not specify a victim, we review the instructions as a whole. *State v. Prado*, 144 Wn. App. 227, 240, 181 P.3d 901 (2008). And instruction 45, immediately following the "to convict" instruction for the second degree assault of Roushey, instructed the jury to consider unlawful display of a weapon if it found Chief Goes Out not guilty of assaulting Roushey. As such, the jury was clearly instructed that unlawful display of a weapon was a lesser included offense in the assault of Roushey. By finding Chief Goes Out guilty of the unlawful display of a weapon on Count VI, the jury found that Chief Goes Out did not assault Roushey,

14

but unlawfully displayed a weapon in her presence. The robbery thus had a different victim than the unlawful display of the weapon and these crimes did not merge. As such, the trial court did not err by refusing to merge Count IV with Count VI.

### IV. SAME CRIMINAL CONDUCT

Chief Goes Out additionally argues in the alternative that the robbery of Little (Count II) and the assault of Little (Count III) constitute the same criminal conduct. We disagree because the crimes occurred at different times and places and encompassed different criminal intent.

We review a trial court's determination of whether two acts constituted the same criminal conduct for abuse of discretion. *State v. French*, 157 Wn.2d 593, 613, 141 P.3d 54 (2006). Offenses are the same criminal conduct if they require "the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Under RCW 9.94A.589(1)(a), offenses that constitute the same criminal conduct are treated as one crime for sentencing purposes.

First, the two crimes at issue did not take place at the same time and place. While they *began* at the same time and place, the assault continued after the car was in motion. The assault thus occurred at a different time and place from the robbery.

Furthermore, the crimes did not encompass the same criminal intent. Our Supreme Court has held that whether two crimes shared the same criminal intent depends on "'the extent to which the criminal intent, objectively viewed, changed from one crime to the next. . . . This, in turn, can be measured in part by whether one crime furthered the other.'" *State v. Williams*, 135 Wn.2d 365, 368, 957 P.2d 216 (1998) (quoting *State v. Vike*, 125 Wn.2d 407, 411, 885 P.2d 824 (1994)). Here, the assault continued after the robbery had already been accomplished; it did not

further the completed robbery. The record shows that Vailtine's intent changed from robbing Little of the car to gratuitously hurting him. The crimes accordingly did not encompass the same criminal intent.

Because Count II and Count III did not occur in the same time and place and did not involve the same criminal intent, the trial court did not abuse its discretion by ruling that they were not the same criminal conduct. Chief Goes Out's claim to the contrary fails.

## STATEMENT OF ADDITIONAL GROUNDS

Chief Goes Out filed a statement of additional grounds under RAP 10.10. He raises speedy trial violations and ineffective assistance of counsel claims. The record reflects that Chief Goes Out filed a pro se motion, which his counsel declined to argue, to dismiss the charges against him for violation of his speedy trial rights. But Chief Goes Out's motion is not part of the record, nor is there any record of the various continuances or the reasons for them, aside from the trial court's oral description of the continuances that had been granted in the case. Accordingly, we cannot review his claim that his speedy trial rights were violated or his argument that his attorney was ineffective by not arguing violation of speedy trial. *See* RAP 10.10; *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). In any event, we do not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 338 n. 5, 899 P.2d 1251 (1995). Chief Goes Out also contends that the trial court erroneously instructed the jury that it must be unanimous to return a "no" verdict on the firearm enhancement special verdicts submitted to the jury and that his attorney was ineffective for not proposing a different instruction. But our Supreme Court has held that an instruction requiring

16

No. 42289-1-II

unanimity to answer "no" on a special verdict is not error. *State v. Nunez*, 174 Wn.2d 707, 718, 285 P.3d 21 (2012). We see no merit to Chief Goes Out's arguments.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Quinn-Brintnall, J.

Van Deren, J.