[No. 63607-3-I.    Division One.    October 25, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDERICK CHARLES BROWN, *Appellant*.

*Frederick Brown*, pro se.

*Dana M. Lind* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 LAU, J. — A jury convicted Frederick Brown of five felony violations of a no-contact order (FVNCO). Brown assigns error, arguing (1) convictions for conduct on consecutive days in October and December violated double jeopardy, (2) the failure to give a *Petrich*[1] instruction violated his right to a unanimous jury, (3) the prosecutor argued facts not in evidence, (4) ineffective assistance of counsel, and (5) the State failed to prove underlying convictions. Finding no error, we affirm.

## *FACTS*

¶2 Denise Apodaca and Frederick Brown met near the end of 2004 or in early 2005. They began dating shortly thereafter. They lived together at various times between 2005 and 2007. On April 7, 2007, Apodaca asked her neighbor to call police to report a domestic assault by Brown, and the neighbor did so. On September 4, 2007, Apodaca obtained a no-contact order preventing Brown from contacting her.

¶3 Although Brown contacted Apodaca numerous times after Apodaca obtained the no-contact order, the State charged Brown with five FVNCO counts.

¶4 On October 27, 2007 (count 2), Apodaca received numerous phone calls from Brown. Apodaca called the police. Phone records showed 86 calls from Brown's cell phone number to Apodaca's cell phone number and three pages of records between Brown's cell phone number and Apodaca's home phone number.

¶5 In the early morning on October 28 (count 4), Brown went to Apodaca's apartment and knocked on the door. When Apodaca did not respond, Brown kicked in the door. Brown pushed Apodaca down and searched through the house. Police went to the home. Phone records showed 45 calls from Brown's cell phone number to Apodaca's cell phone number and two pages of records from Brown's cell phone number to Apodaca's home phone number.

---

[1] *State v. Petrich*, 101 Wn.2d 566, 571, 683 P.2d 173 (1984).

¶6 On November 19 and 20 (count 5), phone records showed numerous phone calls between Brown's cell phone number and Apodaca's home and cell phone numbers. Brown also rang Apodaca's doorbell. Apodaca saw Brown outside in a white van and called 911. Officers observed the white van 200 to 300 feet from Apodaca's apartment and arrested Brown.

¶7 On December 7 (count 6), Apodaca called police to report numerous phone calls she believed were from Brown. Police answered one blocked call, with no response. Phone records showed many calls from Brown's cell phone number to Apodaca's cell and home phone numbers. Calls began at 10:59 p.m. on December 7 and continued throughout the next day.

¶8 On December 9 (count 7), Apodaca arrived home from the casino early in the morning with Nimensio Rivera.[2] Rivera saw and heard Brown repeatedly say, "[A]re you kidding me[?]" Brown grabbed Apodaca. Apodaca tried to call police from her cell phone, but Brown grabbed the phone and broke it. Brown then fled the scene as Rivera ran after him. Report of Proceedings (RP) (Sept. 22, 2008) at 13-17. Apodaca called the police from her home, and police arrived at approximately 2 a.m. Phone records showed multiple calls between Brown's cell phone number and Apodaca's home and cell phone numbers.

### Brown's Alibi

¶9 At trial, Brown's girl friend, Tonya Webster, testified she was constantly with Brown from October 26 through 28 and December 8 and 9. Brown therefore argued that he could not have repeatedly called Apodaca.

¶10 The State sought to impeach Webster. A Virgin Mobile representative testified that there were calls between Brown's phone and the number (253)876-5471 dur-

---

[2] Rivera appears to have misstated that the time of these events was the evening of December 7 and the morning of December 8, but sheriff deputies' testimony indicates that these events actually occurred the evening of December 8 and the morning of December 9.

ing the above times. The State apparently did not have records showing that (253)876-5471 belonged to Webster. To show that this number belonged to Webster, prosecutors obtained a November 26 jail recording between Brown and that number. No jail representative testified. A prosecutor wrote "(253) 876-5471" on a CD (compact disc) case containing the jail phone call recording, and the prosecutor played the recording for Webster. Webster identified her voice and Brown's voice on the recorded call. The prosecutor asked Webster whether the number written on the CD belonged to her. Webster claimed she did not remember, although at one point she said, "It could be possible."

¶11 During closing, the prosecution argued,

[Webster] came in to tell you that [Brown] was with her every minute of every day for the weekend of October 27th through October 29th. Mr. Watkinson from Virgin Mobile told you that there were 37 calls between the defendant's cell phone and Ms. Webster's cell phone number 253-876-5471.

[DEFENSE]: Objection. Facts not in evidence.

THE COURT: Overruled. Go ahead.

[PROSECUTOR]:—on that weekend; 37 phone calls.

Now, Ms. Webster claimed that she couldn't remember her phone numbers. She has had three or four cell phone numbers in less than a year and she doesn't remember what those numbers are. Doesn't remember any of the digits, can't tell us anything about them. When I played a call that was made to that phone number, she said well, yes, that was me; yes, that was Frederick, but—

[DEFENSE]: Objection. Facts not in evidence.

THE COURT: Overruled. Go ahead.

RP (Oct. 1, 2008) at 33-34.

¶12 A jury found Brown guilty of the five FVNCO counts and one interfering with an emergency call count but not guilty on two burglary counts. The trial court imposed concurrent 29-month sentences on each FVNCO conviction and concurrent with a 12-month suspended sentence on the misdemeanor interfering with an emergency call count. Brown appeals his FVNCO judgment and sentence.

## DISCUSSION

### Double Jeopardy

¶13 Brown argues that his "multiple convictions for violating the no[-]contact order on consecutive days in October and December violate the prohibition against double jeopardy, as [his] conduct was continuing." Br. of Appellant at 23. The State counters that the legislature intended to make each no-contact order violation a chargeable offense and, therefore, under a unit of prosecution analysis, the convictions do not violate double jeopardy. We agree.

¶14 The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution provide protections against double jeopardy. Washington's constitutional protections are coextensive with those provided by the federal constitution. *State v. Womac*, 160 Wn.2d 643, 650, 160 P.3d 40 (2007).

¶15 To analyze whether a double jeopardy violation has occurred for punishment under the same statute multiple times, we must determine the unit of prosecution intended by the legislature. *State v. Adel*, 136 Wn.2d 629, 633-34, 965 P.2d 1072 (1998). Double jeopardy protects a defendant from multiple convictions for committing just one unit of the crime. *Adel*, 136 Wn.2d at 634. The standard of review for resolving unit of prosecution issues on appeal is de novo. *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005). This requires a three-part analysis.

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007).

¶16 The first step in determining the proper unit of prosecution is to examine the language of the statute. *Ose,*

156 Wn.2d at 144. The court first looks to the statute's plain meaning to determine legislative intent. *Ose*, 156 Wn.2d at 144. "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Elmore*, 143 Wn. App. 185, 188, 177 P.3d 172 (2008). Statutes are construed as a whole to harmonize and give effect to all provisions when possible. *State v. Young*, 125 Wn.2d 688, 696, 888 P.2d 142 (1995).

¶17 The statute at issue, former RCW 26.50.110, provided in relevant part,

Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, *a violation* of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:

(i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;

(ii) A provision excluding the person from a residence, workplace, school, or day care;

(iii) A provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location; or

(iv) A provision of a foreign protection order specifically indicating that a violation will be a crime.[3]

Former RCW 26.50.110(1)(a) (LAWS OF 2007, ch. 173, § 2) (emphasis added).

¶18 Former RCW 26.50.110(1) punishes "a violation" of a no-contact order. Use of the word "a" supports the State's

---

[3] We note that although the State relies in its brief on the version of the statute prior to the 2007 amendments cited here, the crimes at issue occurred after those amendments' July 22, 2007 effective date. Regardless, our analysis is the same under either version of the statute. The convictions were elevated to felonies due to prior no-contact order violations.

reading that the unit of prosecution is each single violation of a no-contact order. The Supreme Court "has consistently interpreted the legislature's use of the word 'a' in a criminal statute as authorizing punishment for each individual instance of criminal conduct, even if multiple instances of such conduct occurred simultaneously." *Ose*, 156 Wn.2d at 147.

¶19 Division Two of this court interpreted the statute at issue here in *State v. Allen*, 150 Wn. App. 300, 207 P.3d 483 (2009). There, Allen sent two e-mails on different days that the victim viewed at the same time, and he was convicted of two no-contact order violations. Allen argued that because the victim viewed the e-mails at the same time, one of his convictions violated double jeopardy. *Allen*, 150 Wn. App. at 307. The court disagreed, reasoning that the statute focuses on the defendant's actions, not the victim's, and held that each act of sending an e-mail constituted a statutory violation. Therefore, there was no double jeopardy infringement. *Allen*, 150 Wn. App. at 313. We similarly held that three no-contact order charges for sending three letters did not violate double jeopardy. *State v. Parmelee*, 108 Wn. App. 702, 709, 32 P.3d 1029 (2001) ("Each of the three charges filed against Parmelee for violating one of the no-contact orders or the protection order was based on a different, individual letter mailed to Turner.").[4]

¶20 Even if the statute's language is ambiguous, the statute's history supports the State's interpretation. In *State v. Bunker*, our Supreme Court recently addressed the issue of whether former RCW 26.50.110 punished only those no-contact order violations " 'for which an arrest is required under RCW 10.31.100(2) (a) or (b).' " *State v. Bunker*, 169 Wn.2d 571, 577, 238 P.3d 487 (2010) (emphasis omitted) (quoting former RCW 26.50.110). The court reasoned,

---

[4] *Parmelee* involved a slightly different issue because Parmelee was convicted under two different statutes. Parmelee argued that "convictions for felony stalking and court order violations violate[d] double jeopardy principles because they were based on the same acts." *Parmelee*, 108 Wn. App. at 708. We agreed with the State "that because each court order violation conviction was predicated on a separate letter, the same act or transaction was not the basis for all of Parmelee's convictions and traditional double jeopardy principles do not apply." *Parmelee*, 108 Wn. App. at 708.

In 2007, the legislature unanimously amended former RCW 26.50.110 (2006) to exorcise the arrest provision and make clear that any violation of a no-contact order restraint provision was a crime. FINAL H.B. REP. on Substitute H.B. 1642, at 2, 60th Leg., Reg. Sess. (2007). Regarding the amendments, the legislature stated:

> The legislature finds this act necessary to *restore and make clear* its intent that a willful violation of a no-contact provision of a court order is a criminal offense and shall be enforced accordingly to preserve the integrity and intent of the domestic violence act. *This act is not intended to broaden the scope of law enforcement power or effectuate any substantive change to any criminal provision* in the Revised Code of Washington.

LAWS OF 2007, ch. 173, § 1 (emphasis added). This legislative statement of intent leaves no doubt regarding the correct interpretation of former RCW 26.50.110(1) (2006). The nature of the former and 2007 versions of the statute are substantively the same, and both criminalize all no-contact order violations.

*Bunker*, 169 Wn.2d at 581-82.

¶21 Although *Bunker* dealt with the impact of the language "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" on the earlier part of the statute, our Supreme Court interpreted the legislature's intent as punishing all no-contact order violations. This lends support to the State's argument that the statute aims to punish each violation of the statute, rather than a continuing course of conduct.

¶22 Brown relies on *State v. Spencer*, 128 Wn. App. 132, 114 P.3d 1222 (2005). There, the State charged Spencer with both residential burglary and a no-contact order violation. *Spencer*, 128 Wn. App. at 135. Spencer entered the victim's home and remained for several minutes despite requests to leave. Spencer was convicted on both counts. Spencer ar-

gued that the no-contact order violation was completed when he came within 1,000 feet of the residence and therefore he lacked intent to commit a crime upon entering the residence—an element of the burglary statute. *Spencer*, 128 Wn. App. at 136. The court rejected this argument, holding that violation of a no-contact order was a continuing crime as long as a defendant stayed within the "prohibited zone." *Spencer*, 128 Wn. App. at 137-39.

¶23 Relying on *Spencer*, Brown argues that his continuous phone calls kept him in the "prohibited zone" and therefore he committed only one statutory violation during October and one in December. But *Spencer* dealt with the elements of the burglary statute, not double jeopardy. The State did not charge Spencer with multiple no-contact order violations. Further, Brown's case is factually distinguishable. The *Spencer* court simply determined the scope of one particular contact that lasted several minutes. It did not hold that repeated contacts were continuing. The State did not charge Brown with multiple violations for a single phone call or a single in-person contact. It charged Brown with separate contacts occurring on separate days. And *Spencer* is consistent with charging multiple counts for multiple contacts.

¶24 Brown also argues that the State took inconsistent positions by charging multiple FVNCO violations within a short span but then also arguing the "continuing course of conduct" exception applied to avoid a jury instruction on unanimity. *Petrich*, 101 Wn.2d at 571. But the unit of prosecution analysis is a pure question of legislative intent, while the continuing course of conduct analysis discussed below is a factual inquiry undertaken by the trial court. Accordingly, this argument fails.

*Unanimous Jury Verdict*

¶25 Brown argues that "because the State presented evidence of multiple acts that could have formed the basis for each charge but failed to elect a specific act for the jury to find," the trial court should have instructed the jury that

it must be unanimous as to the act chosen. Br. of Appellant at 28. The State counters that no *Petrich* instruction was required because the "continuing course of conduct" exception applies. We review the adequacy of jury instructions de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

■■ ¶26 A conviction requires that a unanimous jury conclude that the defendant committed the criminal act charged in the information. *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). A defendant's right to a unanimous verdict is rooted in the Sixth Amendment to the United States Constitution and in article I, section 22 of the Washington Constitution. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988) (citing CONST. art. I, § 22; U.S. CONST. amend. VI).

■ ■ ¶27 When a defendant has committed several criminal acts but is charged with only one count, the prosecution normally has two choices. *Petrich*, 101 Wn.2d at 572. Either the State may elect the act it will rely on or the judge must instruct the jury as to the unanimity requirement. *Petrich*, 101 Wn.2d at 572. But an exception exists when the acts constitute a continuing course of conduct. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). To determine whether there is a continuing course of conduct, we evaluate the facts in a commonsense manner, considering (1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose. *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). In distinguishing between distinct criminal acts and a continuing course of conduct, we have held that "evidence that the charged conduct occurred at different times and places tends to show that several distinct acts occurred . . . ," while "evidence that a defendant engages in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct. . . ." *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

¶28 We conclude that the continuing course of conduct exception applies here. Although the criminal acts did not occur at the same time, the time separating the criminal acts was short. The criminal acts involved the same parties (Brown and Apodaca), the same locations (at Apodaca's apartment and on her phones), and the same ultimate purpose (to contact and confront Apodaca). The trial court did not err by declining to give a unanimity instruction.

*Facts Not in Evidence*

¶29 Brown next argues, "The trial court erred in allowing the prosecutor to argue facts not in evidence." Br. of Appellant at 31. Brown argues that the trial court should not have allowed the prosecutor to argue in closing that the phone number (253)876-5471 belonged to Brown's girlfriend, Tonya Webster, because that fact was not "in evidence." The State counters that the trial court properly allowed the prosecutor to make reasonable inferences from the evidence during closing.

¶30 But the only case that Brown cites for this argument is *State v. Staten*, 60 Wn. App. 163, 802 P.2d 1384 (1991), a case dealing with prosecutorial misconduct. Brown, however, did not assign error based on prosecutorial misconduct. We therefore decline to consider it. RAP 10.3.

¶31 Rather, Brown's argument challenges the scope of closing argument permitted by the trial court. "It is well established that trial courts possess broad discretionary powers over the scope of counsel's closing arguments." *State v. Frost*, 160 Wn.2d 765, 771-72, 161 P.3d 361 (2007) (citing *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975)). Counsel may argue the evidence and reasonable inferences that can be drawn from it. *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985). We review a court's decision regarding the scope of closing argument for abuse of discretion. *See State v. Frazier*, 55 Wn. App. 204, 212, 777 P.2d 27 (1989).

¶32 Even if we find an abuse of discretion, we also apply a harmless error analysis to a trial court's decision

regarding the scope of closing arguments. *See Frost*, 160 Wn.2d at 781; *see also State v. Bourgeois*, 133 Wn.2d 389, 405-06, 945 P.2d 1120 (1997) ("In light of our conclusion that the trial court erred in admitting this evidence was harmless, we conclude that the prosecution's argument based upon this evidence was similarly harmless."). And where an error is not from a constitutional mandate, we do not apply the more stringent "harmless error beyond a reasonable doubt" standard. *Bourgeois*, 133 Wn.2d at 403. Instead we apply "the rule that error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole. *Bourgeois*, 133 Wn.2d at 403.

¶33 We need not decide whether the trial court abused its discretion by allowing the prosecutor to argue that the phone number (253)876-5471 belonged to Webster. Based on the record, overwhelming evidence supporting Brown's FVNCO convictions demonstrates that any error was harmless, including (1) voluminous phone records showing numerous calls between Brown and Apodaca, (2) Apodaca's testimony regarding Brown's phone calls and in-person contacts, (3) sheriff deputies' testimony, and (4) Rivera's testimony as discussed above.

### Ineffective Assistance of Counsel

¶34 Brown argues ineffective assistance of counsel because at sentencing, "defense counsel did not argue counts II and IV and counts VI and VII constituted the same criminal conduct." Br. of Appellant at 34-35. The State responds that Brown waived the same criminal conduct argument by failing to raise it at sentencing. The State also argues that even if timely raised, Brown's counsel was not deficient for failing to raise the issue.

¶35 Because Brown's trial counsel did not argue same criminal conduct at sentencing, that argument is

waived. *State v. Jackson*, 150 Wn. App. 877, 892, 209 P.3d 553 (2009). To avoid waiver, Brown asserts ineffective assistance of counsel. A party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5.

¶36 Brown must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to overcome the " 'strong presumption' " of effective representation, Brown bears the burden of establishing that no legitimate strategic or tactical reasons support counsel's choices. *State v. McFarland*, 127 Wn.2d 322, 336-37, 899 P.2d 1251 (1995) (quoting *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987)). Where a claim of deficiency rests on counsel's failure to make an objection, a defendant must show that the objection would likely have been sustained to establish prejudice. *McFarland*, 127 Wn.2d at 337 n.4 ("Absent an affirmative showing that the motion probably would have been granted, there is no showing of actual prejudice.").

¶37 Brown cannot show either deficient performance or prejudice because his same criminal conduct argument would not likely have succeeded. RCW 9.94A.589(1)(a) defines "same criminal conduct" as two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. Because the conduct underlying the multiple FVNCO counts did not occur at the same time, the trial court would likely have concluded that the multiple acts over two or three days did not occur at the same time as required by the statute. And Brown's counsel was under no obligation to make such an argument merely because it might have been colorable. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 733-34, 16 P.3d 1 (2001). Accordingly, Brown's ineffective assistance claim fails.

*Failure To Prove Underlying Convictions*

¶38 Brown was convicted of two unrelated misdemeanor no-contact order violations in 2005. These convic-

tions elevated his convictions here to felonies. Brown argues that because the prior convictions were based on nonthreatening telephone conduct, that conduct did not violate RCW 26.50.110 at the time under the former version of the statute. But this argument fails under our Supreme Court's recent decision in *Bunker*, which held, "The nature of the former and 2007 versions of [RCW 26.50.110] are substantively the same, and both criminalize all no-contact order violations." *Bunker*, 169 Wn.2d at 582.

## *CONCLUSION*

¶39 The trial court correctly found that multiple FVNCO convictions based on contacts on separate days did not violate double jeopardy. The trial court properly declined to give a *Petrich* instruction because Brown engaged in a continuing course of conduct. No prejudice resulted when the State argued that Brown's alibi was not credible. Brown received effective assistance of counsel because his counsel's performance was not deficient. Lastly, Brown's argument that the State failed to prove underlying criminal conduct fails under *Bunker*. We affirm Brown's convictions.

GROSSE and APPELWICK, JJ., concur.

Review denied at 171 Wn.2d 1015 (2011).