2015 MAR 30  AM 9: 51


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71309-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| D'ANDRE JOVON CORBIN, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: March 30, 2015 |

BECKER, J. — This appeal of a conviction for felony cyberstalking challenges the sufficiency of the evidence to prove a true threat. Notwithstanding the victim's testimony that she was not frightened, there was sufficient evidence to prove it was objectively foreseeable that the appellant's threats to kill would be taken seriously.

On December 14, 2012, appellant D'Andre Corbin conducted a long and hostile conversation via text messages with his wife while she was at work. The messages from Corbin stated that he was going to try to kill her that night. Several messages simply said, "Ur dead." Corbin's wife texted back that she hated him. She called him a loser. Corbin responded with promises that he was coming that night to hurt her, to knock her out, and to kill her. Exhibit 14 is a series of photographs of these and similar text messages between 7 and 8 p.m.

Corbin also left a voice mail message on his wife's phone that evening in which he expressed his intent to kill her.

Shortly after the text message exchange ended, Corbin appeared at his wife's workplace. She called 911. Corbin found her and chased her out the back door of the workplace and into a roadway where he was seen holding her hair and punching her with his arms and fists. Police intervened and took the victim to the hospital.

The State charged Corbin with one count of attempted first degree assault and two counts of felony cyberstalking. The jury was given the following to-convict instruction for felony cyberstalking, requiring proof that the defendant used electronic communication to threaten injury and that "the threat consisted of a threat to kill the other person":

> To convict the defendant of the crime of felony cyberstalking, . . . each of the following five elements must be proved beyond a reasonable doubt:
> (1) That on or about December 14, 2012, the defendant made an electronic communication to another person Denise Corbin;
> (2) That at the time the defendant initiated the electronic message the defendant intended to harass, intimidate, torment, or embarrass that other person;
> (3) That the defendant threatened to inflict injury on the person or property or of any member of the family or household of the person;
> (4) That the threat consisted of a threat to kill the other person; and
> (5) That the electronic communication was made or received in the State of Washington.

Instruction 16. A Petrich instruction was also given:

> The State alleges in counts 2 and 3 that the defendant committed acts of cyberstalking on multiple occasions. To convict the defendant of any count of cyberstalking in either count 2 or

2

count 3, one particular act of cyberstalking must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of cyberstalking.

Instruction 22. The jury convicted Corbin as charged.

Where a threat to commit bodily harm is an element of a crime, the State must prove the threat was a "true threat." State v. Kilburn, 151 Wn.2d 36, 54, 84 P.3d 1215 (2004). This is because of the danger that the criminal statute will be used to criminalize pure speech and impinge on First Amendment rights. The test for determining a "true threat" is an objective test that focuses on the speaker. Kilburn, 151 Wn.2d at 54. The State need not prove the speaker actually intended to carry out the threat. The question is whether a reasonable person would foresee that the threat would be interpreted as a serious expression of intention to inflict the harm threatened. Kilburn, 151 Wn.2d at 46. True threats are not protected speech because of the "fear of harm aroused in the person threatened and the disruption that may occur as a result of that fear." Kilburn, 151 Wn.2d at 46.

Consistent with Kilburn, instruction 17 informed the jury that a statement or act, to be a threat, "must occur in the context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk." Kilburn, 151 Wn.2d at 43.

Felony cyberstalking is an offense with the potential to be based on protected speech. For that reason, this court conducts an independent

3

examination of the entire record to be sure that the speech in question actually falls within the unprotected category. Kilburn, 151 Wn.2d at 50.

Corbin argues that an examination of the record in this case shows that taken in context, his threats to kill were not true threats. His wife testified that she did not take the threats seriously because she and Corbin had made similar threats to each other in previous arguments. She said it was "something he said to get under my skin, to make me mad, and I know that. And it wasn't something where, immediately, it was, like, 'Okay, he's going to kill me; I'm scared.' That wasn't the case." A coworker testified that Corbin's wife did not seem alarmed when she received and read the text messages before Corbin arrived. Corbin argues that his wife's caustic and insulting replies to his messages supply additional context proving Corbin would not have reasonably foreseen that his threats to kill would be regarded as a serious expression of intent to carry out the threat.

We disagree. The jury was not obligated to accept the wife's testimony that Corbin's threats to kill were routine and familiar. The jury could have concluded that she was minimizing the threats, perhaps to protect Corbin. The fact that the wife called the police and ran outside screaming as soon as she saw Corbin entering her workplace contradicts her testimony that she did not take the messages seriously. The evidence supports an inference that a reasonable person in Corbin's situation would have foreseen that his threats to kill his wife would have been interpreted as a serious expression of intent to carry out the threats.

4

Corbin next argues that his sentence exceeded the statutory maximum for attempted first degree assault. The State concedes that because attempted first degree assault is treated as a Class B felony, the statutory maximum is 120 months. RCW 9A.28.020(3)(b); RCW 9A.20.021(1)(b). We accept the State's concession. The imposition of 36 months' community custody in combination with 120 months' imprisonment exceeds the statutory maximum. This must be corrected by resentencing.

Corbin has filed a statement identifying additional grounds for review pursuant to RAP 10.10.

First, Corbin asserts that the trial court violated his right to remain silent by compelling him to produce documentary evidence against himself. We find no basis for review.

Second, he alleges the State suppressed Brady[1] material and the result was ineffective assistance of counsel. This ground does not warrant further review.

Third, Corbin asserts that he received ineffective assistance of counsel when his attorney proposed a unanimity instruction on count 1 that misstated the law, relieving the State of its burden to prove specific intent. That unanimity instruction, instruction 13A, does not misstate the law.

Fourth, he asserts that he received ineffective assistance of counsel when his attorney failed to argue that the acts underlying all three convictions constituted the same criminal conduct. This ground does warrant review. At this

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

court's request, the State provided a brief.[2] The brief was unresponsive to our request, in that it treated our inquiry about same criminal conduct as if it were an inquiry about a continuing course of conduct.

Two or more crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Count 1 was attempted assault in the first degree. Counts 2 and 3 were felony cyberstalking. Attempted assault and felony cyberstalking do not require the same criminal intent and, in this case, were not committed at the same time and place. The two convictions for felony cyberstalking do, however, likely satisfy the test for same criminal conduct.

It is the defendant who must establish that crimes constitute the same criminal conduct at sentencing. State v. Graciano, 176 Wn.2d 531, 539-40, 295 P.3d 219 (2013). Here, the issue was not raised at sentencing. Nevertheless, it may be raised on appeal as an issue of ineffective assistance of counsel. See, e.g., State v. Brown, 159 Wn. App. 1, 16, 248 P.3d 518 (2010), review denied, 171 Wn.2d 1015 (2011).

A reasonable possibility exists that the sentencing court would have found that the two felony cyberstalking convictions constituted the same criminal conduct had Corbin's counsel argued that the two offenses were committed at the same time and place and involved the same victim and the same intent. Corbin received ineffective assistance of counsel with respect to this issue. He is

---

[2] The State's motion for an extension of time to file this brief is granted.

entitled to a remand for a new sentencing hearing in which counsel may argue that the two cyberstalking offenses encompass the same criminal conduct.

Fifth, Corbin asserts that convictions for counts 2 and 3 violate double jeopardy under a unit of prosecution analysis, citing State v. Morales, 174 Wn. App. 370, 298 P.3d 791 (2013). This ground also warrants review.

No case has yet addressed the unit of prosecution either for felony cyberstalking, RCW 9.61,020, or for the similarly worded offense of telephone harassment, RCW 9.61.230. Morales provides a unit of prosecution analysis for the related, but differently worded, offense of harassment, RCW 9A.46.010. Given the particular scenario in Morales, the court concluded the unit of prosecution was a threat to cause bodily harm to a single identified person at a particular time and place, regardless of how many times it is communicated. Morales, 174 Wn. App. at 387.

At this court's request, the State responded by pointing out that the cyberstalking statute states that a person is guilty when he or she "makes an electronic communication to such other person or a third party." RCW 9.61.260(1) (emphasis added). This is different from the wording of the statute in Morales. In the scenario here, this language suggests the legislative intent was that each distinct electronic communication amounting to a threat to kill would constitute a separate crime of felony cyberstalking. Accordingly, we conclude Corbin's assertion of a double jeopardy violation does not warrant further review.

Sixth, Corbin contends that the trial court miscalculated his offender score because it counted two juvenile criminal adjudications from 1994 and 1995, before he turned 15 years old. Prior to an amendment to the Sentencing Reform Act in 1997, juvenile offenses committed before the age of 15 were not included as prior offenses in the calculation of offender scores for current offenses. In re Pers. Restraint of LaChapelle, 153 Wn.2d 1, 4, 100 P.3d 805 (2004). However, a series of later legislative amendments and court cases established that for crimes committed after the legislature's 2002 amendments to the Sentencing Reform Act, criminal history includes all juvenile adjudications that have not since been vacated. State v. Varga, 151 Wn.2d 179, 191-95, 86 P.3d 139 (2004). Corbin was sentenced for offenses that occurred in 2012. Therefore, his statement does not provide a basis to review his contention that his 1994 and 1995 juvenile adjudications were improperly reflected in his offender score.

The felony cyberstalking convictions are affirmed. The case is remanded for a new sentencing hearing in which Corbin may argue that the two cyberstalking offenses encompass the same criminal conduct. At resentencing, the court shall also ensure that the sentence does not exceed the statutory maximum.

Becker, J.

WE CONCUR:

8