# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

SEAN G. PATAYSINGH,

                Appellant.

No. 72048-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 3, 2015

TRICKEY, J. — Sean Pataysingh appeals his conviction and sentence for first degree assault. He contends that the trial court erred by failing to give a unanimity jury instruction. We hold that a unanimity jury instruction was not required because the evidence established an ongoing course of conduct. Accordingly, we affirm.

## FACTS

On December 29, 2013, Luke Oakland went to a bar at a restaurant to watch a football game. When the game was over, Oakland stepped outside the restaurant to chat with a friend who had also been watching the football game. Suddenly, a stranger—later identified as Pataysingh—approached Oakland and asked him if he had any change or "any money."[1] Oakland responded in the negative. Pataysingh demanded, "Where is my money?", "Where is my fucking money?", and stabbed Oakland in the chest.[2] Pataysingh then began striking Oakland with his cane. Oakland's friend, who had been standing a few feet away, seized the cane from Pataysingh.

---

[1] 1 Report of Proceedings (RP) at 76.
[2] 1 RP at 76-78.

Shortly thereafter, law enforcement officers detained Pataysingh near the restaurant. Pataysingh agreed to be interviewed by the police. The interview was recorded and transcribed.[3]

In his statement to police detectives, Pataysingh gave divergent accounts of what took place on the night in question. Initially, Pataysingh told the detectives that Oakland instigated the confrontation and attempted to stab Pataysingh with a knife first. According to this version of events, when Oakland approached Pataysingh with the knife, Pataysingh was able to turn the knife toward Oakland and stabbed Oakland in self-defense.

The detectives told Pataysingh that it was hard to believe his story because it would have been very difficult to seize a knife from someone without getting injured, and because eyewitnesses said they observed Pataysingh produce the knife. Pataysingh then admitted he was in possession of the knife and removed it from his pocket when Oakland lunged at him. He also stated that once he stabbed Oakland, Oakland pulled the knife from his chest and attempted to stab Pataysingh with it, at which point Pataysingh began beating Oakland with his cane. When the detectives again questioned the veracity of this narrative, Pataysingh admitted that he initiated the assault. After further questioning by the detectives, Pataysingh admitted that he attacked Oakland because was angry about a debt that he believed Oakland owed him.

The State charged Pataysingh with one count of first degree assault with a deadly weapon. A jury found Pataysingh guilty as charged and returned a special verdict form finding that he was armed with a deadly weapon at the time of the commission of the

---

[3] Pataysingh did not testify at trial. The recording of the interview was played for the jury, and the transcript was admitted for illustrative purposes only.

crime. The trial court imposed a standard range sentence of 147 months, plus 24 months for the deadly weapon enhancement.

Pataysingh appeals.

## ANALYSIS

Pataysingh's sole contention on appeal is that the trial court erred by failing to provide the jury a unanimity instruction. Specifically, Pataysingh maintains that there was evidence of two distinct acts upon which jurors could have relied in rendering their guilty verdict: the act of stabbing Oakland with a knife and the act of striking Oakland with a cane. We disagree.

Pataysingh did not propose a unanimity instruction at trial. However, "the right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury and thus may be raised for the first time on appeal." State v. Handyside, 42 Wn. App. 412, 415, 711 P.2d 379 (1985). The adequacy of jury instructions is a question of law that we review de novo. State v. Boyd, 137 Wn. App. 910, 922, 155 P.3d 188 (2007) (citing State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)).

Criminal defendants in Washington are entitled to a unanimous jury verdict. State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the State presents evidence of multiple acts that could each form the basis for one charged crime, the State must choose which of the acts it relied on or the court must give a Petrich[4] instruction to the jury requiring them to agree on a specific criminal act. State v. Coleman, 159 Wn.2d 509, 510-11, 150 P.3d 1126 (2007). If neither of these alternatives occurs, a constitutional error arises because of the possibility that some jurors may have relied on one of the

---

[4] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

criminal acts while other jurors relied on another, resulting in a lack of unanimity on all of the elements necessary for a conviction. State v. Greathouse, 113 Wn. App. 889, 916, 56 P.3d 569 (2002) (citing Kitchen, 110 Wn.2d at 411).

However, no unanimity instruction is required if the acts were part of a continuing course of conduct. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989), overruled on other grounds by Kitchen, 110 Wn.2d 403. "To determine whether there is a continuing course of conduct, we evaluate the facts in a commonsense manner, considering (1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). "[E]vidence that a defendant engages in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct rather than several distinct acts." State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

Pataysingh contends that a juror could have reasonably believed his initial statements to the police of what took place that night—that he acted in self-defense when he stabbed Oakland and that his act of hitting Oakland with his cane constituted assault with a deadly weapon.[5] But viewed in a common sense manner, it is clear that Pataysingh's acts were part of a continuing course of conduct and, thus, neither a unanimity instruction nor an election was required. The evidence adduced at trial indicates that Pataysingh stabbed Oakland and immediately began striking him with his cane. The assaults occurred in the same location and within a brief period of time—just

---

[5] The jury was instructed that, "Deadly weapon means any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." Clerk's Papers at 43.

4

moments apart, outside of the restaurant. The assaults involved the same assailant and victim. They were also intended to carry out a common objective, which, according to Pataysingh, was to coerce Oakland in order to be paid back an alleged debt owed. The evidence demonstrates that Pataysingh's actions constituted a continuing course of conduct rather than two distinct acts. The trial court was not required to give a multiple acts unanimity instruction.

Affirmed.

_Trickey, J_

WE CONCUR: