# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58667-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JACOB DE LA O, | |
| Appellant. | |

CHE, J. — Jacob De La O appeals his convictions for two misdemeanor violations of a no-contact order (NCO)–domestic violence on May 9, 2021, arguing a double jeopardy violation and raising various claims in a statement of additional grounds (SAG).

We hold that there is no double jeopardy violation and that De La O's SAG claims are unreviewable or fail on the merits. Accordingly, we affirm De La O's judgment and sentence.

## FACTS

In 2018, De La O and April Harris were in an intimate relationship. In 2019, in a separate criminal matter, a trial court issued a pretrial domestic violence NCO prohibiting De La O from contacting Harris or coming within 500 feet of her residence.[1] While the NCO was in effect, De La O and Harris continued seeing each other.

---

[1] The NCO issued in cause number 19-1-02327-34, admitted Exhibit 9, is not part of our designated record on appeal. A portion of the order read into the record stated, "Do not knowingly enter, remain or come within 500 feet of the protected person's residence, school, workplace or person." Rep. of Proc. (RP) (July 12, 2023) at 254.

The State charged De La O by fifth amended information with four counts of residential burglary and seven counts of misdemeanor violation of an NCO, all as crimes of domestic violence.[2] Counts 8 and 11 both alleged violations of the NCO on May 9, 2021. Upon De La O's request, the trial court allowed him to proceed pro se to trial with standby counsel.

At trial, Harris stated there were times when she and De La O were together inside and outside her apartment. Sometimes, Harris would invite De La O over to her apartment and other times, he would come over unannounced or without Harris's permission.

In 2021, Harris began documenting De La O's visits by taking photos of him and his belongings inside her apartment. The photos were date stamped by Harris's phone. Some photos showed De La O inside Harris's apartment on March 19, April 25, April 30, and May 9, 2021. A photo from May 9 showed De La O sleeping in Harris's apartment. A second photo from May 9 showed De La O with Harris outside her apartment at a bar patio. The State asked Harris, "So Jacob wakes up [i]n your apartment 9th of May, but then you guys go out later and have another picture taken?" to which Harris responded, "Yes." Rep. of Proc. (RP) (July 12, 2023) at 312-13.

Other photos showed De La O with Harris outside her apartment, hiking together on April 3 and 6, 2021. These contacts occurred while the NCO was in effect.

During closing argument, the State addressed the two alleged NCO violations from May 9, 2021, stating,

---

[2] In the information filed on February 25, 2020, the State charged De La O with one count each of residential burglary–domestic violence, violation of no contact order–domestic violence, and obstructing a law enforcement officer.

On Ma[y] 9th, the day starts in the apartment. Mr. De La O again sleeping in the same bed in violation of the no-contact order, [he] can't be there, [he] can't lawfully be in the apartment and then they end up at the tavern later on that day. Those are separate counts. Count 8 [violation of an NCO] is associated with the residential burglary for the 9th of May.

And I believe it's Count 11 is the violation [of an NCO] for being together outside of the apartment [on the same date].

RP (July 13, 2023) at 508-09. The court instructed the jury that "[a] separate crime is charged in each count." CP at 248. The to-convict instructions for counts 8 and 11 were identical except for the different count numbers.

The jury found De La O guilty on all 11 counts and found that De La O and Harris were intimate partners.

De La O appeals.

ANALYSIS

De La O argues that his convictions for the two misdemeanor NCO–domestic violence violations from May 9, 2021 violate double jeopardy because they arose from a single act of the same offense. De La O also raises multiple claims in his SAG.

I. DOUBLE JEOPARDY CLAIM

A. *Legal Principles*

The United States Constitution and Washington Constitution guard against double jeopardy, protecting a defendant from receiving multiple punishments for the same offense. *See* U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

When a defendant is charged with multiple counts of the same offense, "each count must be based on a separate and distinct criminal act." *State v. Mutch*, 171 Wn.2d 646, 662, 254 P.3d

3

803 (2011). When jury instructions are "lacking for their failure to include a 'separate and distinct' instruction," they may be flawed. *Id.* at 663. However, "flawed jury instructions that permit a jury to convict a defendant of multiple counts based on a single act do not necessarily mean that the defendant received multiple punishments for the same offense." *Id.* Considering the record, it must be manifestly apparent to the jury that each count was based on a separate act and that the State was not seeking to impose multiple punishments for the same offense. *Id.* at 664.

When a defendant is convicted of multiple violations of the same statute, we must determine what "unit of prosecution" the legislature intended to be the punishable act under the statute in order to resolve whether double jeopardy principles have been violated. *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2015). The unit of prosecution may be an act or a course of conduct. *Id.* Division One of this court previously determined that the unit of prosecution for an NCO violation under former RCW 26.50.110(1) (2006), *repealed by* LAWS OF 2021, ch. 215, § 170, is "each single violation of a no-contact order." *State v. Brown*, 159 Wn. App. 1, 10-11, 248 P.3d 518 (2010). The remedy for violating double jeopardy is to vacate the potentially redundant conviction. *Mutch*, 171 Wn.2d at 664.

B.     *No Double Jeopardy Violation*

De La O contends that his NCO convictions arose from a single act of the same offense and that the State presented "no evidence of a second and distinct violation supporting the second charge and conviction on May 9." Br. of Appellant at 10. We disagree.

The State responds that the trial court informed the jury that a separate charge was alleged in each count. While that is true, the separate crime instruction alone "is not saving"

because it still fails to inform the jury that each crime required evidence of a different act. *Mutch*, 171 Wn.2d at 663. But this does not end our double jeopardy inquiry. *Id.* We then consider the entire record to determine whether it was manifestly apparent to the jury that each count was based on a separate act and that the State was not seeking to impose multiple punishments for the same offense. *Id.* at 664.

It was manifestly apparent that the jury found De La O guilty of two separate NCO violations to support the two separate convictions. The information charged De La O with two counts of violating an NCO under former RCW 26.50.110(1) based on allegations that constituted two separate units of prosecution.[3] Harris testified that there were times when she and De La O were together inside and outside her apartment. She also specifically testified to two separate NCO violations from May 9, one occurring inside her apartment and one outside her apartment at a bar. Furthermore, in closing argument, the State distinguished the two counts, stating that one stemmed from De La O's contact with Harris inside her residence and the other from his contact with Harris outside her residence. Thus, the record clearly demonstrates that the State was not seeking to impose multiple punishments for the same offense. We hold that there was no double jeopardy violation.

## II. STATEMENT OF ADDITIONAL GROUNDS

We will "review the decision or parts of the decision designated in the notice of appeal." RAP 2.4(a). RAP 10.10(a) permits criminal defendants to "file a pro se statement of additional

---

[3] Former RCW 26.50.110(1) provides that the violation of NCO provisions, including those that prohibit the restrained party from contacting a protected party and from knowingly coming within or remaining within a specified distance of a location, among other provisions, is a gross misdemeanor.

grounds for review to identify and discuss those matters *related to the decision under review*."
(Emphasis added). Here, the decision under review is De La O's judgment and sentence for
convictions arising from two violations of an NCO on May 9, 2021.

We will consider an issue raised in a SAG only when it adequately informs us of "the
nature and occurrence of the alleged errors." RAP 10.10(c); *State v. Alvarado*, 164 Wn.2d 556,
569, 192 P.3d 345 (2008). We do not address claims on direct appeal that depend on evidence
outside the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

De La O raises multiple claims in his SAG, including: that his rights while in custody
were violated because of COVID-19, that he was assaulted while in custody, that his counsel did
not communicate with him, and that corrections staff would not allow De La O to unmute the
microphone and would sign documents for De La O. De La O also makes broad claims about
standby counsel, the prosecutor, the exclusion of allegedly exculpatory evidence or witnesses.
However, these claims are unreviewable because they either are unrelated to the decision from
which he appeals, fail to inform the court of the nature and occurrence of the alleged errors, or
rely on evidence outside the record.

De La O claims the State did not establish the validity of the NCO. Relatedly, De La O
claims the NCO was invalid because "it lacked the essential notice requirement and failed to
inform defendant that stress, duress, threat and coercion is not a defense to a charge of violating
the order." SAG 1.4 at 12. De La O cites *State v. Marking*, which held that the validity of a
protective order is an implicit element of the crime of violating such an order. 100 Wn. App.
506, 509, 997 P.2d 461 (2000). But *Miller* subsequently overruled *Marking*, holding that the
validity of the underlying NCO is not an element of the crime of violating such an order. *State v.*

*Miller*, 156 Wn.2d 23, 32, 123 P.3d 827 (2005). De La O points to no other authority to show that the State was required to establish the validity of the NCO. Moreover, judicial orders, including NCOs, "generally may not be challenged in a subsequent proceeding for the violation of such an order." *State v. Green*, 157 Wn. App. 833, 845, 239 P.3d 1130 (2010). These claims fail.

Next, De La O claims "[t]he Amended information alleging [violations of the] NCO was time barred by the statute of limitations." SAG 1.5 at 12. We disagree. The statute of limitations for gross misdemeanors is two years from the date of violation. RCW 9A.04.080(1)(k). Here, the dates of the seven NCO violations were March 19, April 3, April 6, April 25, April 30, and May 9, 2021, and the fifth amended information was filed a little over two years later on May 26, 2023. CP at 169. However, the State was permitted to amend the original charges after the statute of limitations ran because its amendments related back to the original, timely information filed on February 25, 2020. CP at 1. *See State v. Warren*, 127 Wn. App. 893, 896, 112 P.3d 1284 (2005) (explaining that the "[e]xpiration of the [statute of limitations] for [a] new charge does not necessarily foreclose amendment, because an amendment generally relates back to the timely complaint").

In support of his claim, De La O cites to *City of Bothell v. Kaiser*, 152 Wn. App. 466, 217 P.3d 339 (2009), but that case is distinguishable. In *Kaiser*, the original complaint was filed within the statute of limitations but was constitutionally defective because it omitted an essential element. *Id.* at 478. Therefore, the complaint "failed to charge a crime, and there was no charging document to which the amended charges could relate back when the City later filed the amended complaints." *Id*. Thus, the court held that the amended complaints should have been

dismissed as time-barred by the statute of limitations. *Id.* Here, the original information was filed within the statute of limitations, and there is no claim that it was constitutionally defective such that the fifth amended information could not relate back to it. Thus, De La O's SAG claim fails.

## CONCLUSION

We hold that there was no double jeopardy violation and that De La O's SAG claims are unreviewable or they fail on the merits. Accordingly, we affirm De La O's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, C.J.

Velja‍ric, J.